In the

# United States Court of Appeals
## For the Seventh Circuit

No. 00-2966

CHARLES REYNOLDS and BEATRICE REYNOLDS,

*Petitioners-Appellants,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeal from the United States Tax Court
No. 12112-97—**John F. Dean**, *Special Trial Judge.*

ARGUED NOVEMBER 30, 2001—DECIDED JULY 18, 2002

Before FLAUM, *Chief Judge*, CUDAHY, and MANION, *Circuit Judges*.

CUDAHY, *Circuit Judge.* This dispute arises from certain tax deductions claimed by Charles and Beatrice Reynolds on their 1993 and 1994 tax returns. The Internal Revenue Service (IRS) challenged the deductibility of certain expenses related to a family farm business, rental properties and to Charles Reynolds' private law practice, which is, for better or worse, a sideline from his full-time employment as an IRS supervisor.[1] During the pendency of this dispute, the Reynolds received two brief letters from the IRS

---

[1] Reynolds recently retired from the IRS.

stating that they had no outstanding liability for the 1993 and 1994 tax years. The Reynolds asserted that these letters were binding admissions by the IRS, thus estopping the agency from pursuing any further action against them. The U.S. Tax Court rejected this argument and ruled on the merits, allowing some of the deductions and disallowing others. In addition, pursuant to 29 U.S.C. § 6662(a), the Tax Court upheld a 20% accuracy-related penalty because it found that some of the remaining errors were the result of negligence.

The Reynolds appeal the following: (1) the evidentiary weight given to the no-liability letters, (2) the classification of certain legal defense costs as personal costs rather than as business expenses related to Charles Reynolds' private law practice, (3) the denial of various automobile and travel expenses related to the private law practice, farming activity and the rental properties, and (4) the imposition of the accuracy-related penalties. We affirm the judgment of the Tax Court.

I.

Charles Reynolds joined the IRS in 1976, where he worked as a revenue officer in the Chicago office. Several years later, Reynolds graduated from law school and was promoted to a supervisory position, which involved a caseload of taxpayer audits. In 1987 and 1988, Reynolds received permission from the IRS to practice law in addition to his primary employment with the IRS. However, in 1992, the IRS commenced an investigation of Reynolds springing from concerns that he may have been conducting his private law practice during his workday at the IRS. To defend himself, Reynolds hired a major Chicago law firm and incurred legal expenses. The investigation was officially terminated in 1995.

During 1993 and 1994, which is the time period relevant to this dispute, Charles Reynolds operated a small part-

time law practice. These efforts were limited to a few real estate closings and related activities. In 1993, Reynold's Schedule C for this law practice reported gross receipts of only $700.[2] However, he claimed a net loss of $6,271. His deductions included $2,380 for legal fees related to the IRS investigation of certain questionable on-the-job activities. Similarly, in 1994, Reynold's Schedule C reported gross receipts of $450 with a net loss of $10,255. This amount included $5,615 in legal fees related to the ongoing investigation. In a subsequent audit, the IRS disallowed the business deduction of the legal expenses, ruling that they should instead be categorized as itemized personal expenses on Schedule A and thus deductible to the extent they exceeded the 2% "floor" limitation of 26 U.S.C. § 67(a).

In addition to the reclassification of the legal expense, IRS auditors also denied various other deductions, including automobile and travel expenses allegedly related to the law practice, to a family farm and to rental properties. Only the auto and travel expenses, however, are currently before us on appeal. From our own inspection of the record, we estimate the total amount of the deductions now in dispute to be approximately $3,359.[3] Included in this amount

---

[2]  This case involves a discussion of various tax forms, or "Schedules," used in the preparation of a federal tax return. Schedule C is used to calculate a profit or loss from a sole proprietorship—e.g., a law practice. Schedule A is used to itemize various personal expenses that are deductible under federal law. Schedule E is used to state supplemental income or loss from various other activities—e.g., rental income from real property. Schedule F is used to state a profit or loss from farming activity.

[3]  Neither party in this case provides an intelligible summary of precisely which automobile and travel deductions are now on appeal nor do they give us the total amount of the claimed deductions. Moreover, during the proceedings below, the Tax Court

(continued...)

are travel and automobile expenses allegedly incurred by Charles Reynolds in the course of his law practice, including depreciation of a 1988 Toyota Camry. Similarly, the IRS denied travel and automobile expenses related to rental property owned by the Reynolds in Indiana, Kentucky and Virginia, and travel to Florida to evaluate a real estate development project that never materialized. Finally, the IRS denied travel and automobile expenses incurred in a trip to a family-owned farm in Kentucky, including the depreciation of a 1994 Ford van, which was supposedly used "to haul tillers, plows and farm tools from Virginia to Kentucky and for use in the operation of the farm."[4] Although the Reynolds did not keep a log of specific trips and the

---

[3] (...continued)
discovered that the disputed travel, meals and automobile expenses, including depreciation of various cars owned by the Reynolds, had been consolidated on either Schedules C or E rather than spread across Schedules C, E and F to reflect the costs incurred in each activity (i.e., law practice, rental properties or farming). The Reynolds attempted to cure this problem by submitting additional documents that reflected a more precise breakdown. Although the Reynolds correctly point out that all expenses listed on Schedules C, E and F are "above-the-line" deductions, and thus their assignment to a particular Schedule has no effect on their *total* tax liability, Appellant's Br. at 27, they seem to forget that "the taxpayer[ ] bears the burden of showing a right to the business deduction." *A.E. Staley Mfg. Co. v. Commissioner*, 119 F.3d 482, 486 (7th Cir. 1997) (citing *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992)). It is astonishing that the Reynolds fail to make a clear statement on the *amount* of the automobile and travel deductions they are entitled to, especially since these deductions were disallowed by the Tax Court because of inadequate substantiation under 26 U.S.C. § 274(d). The Reynolds apparently believe that, if their argument carries the day, the U.S. Court of Appeals will do the math for them.

[4] According to tax returns filed by the Reynolds, the family farm generated $50 in revenues in 1993 and $1,745 in 1994. In both years, the farm operated at a net loss.

mileage that corresponded with each money-making activity, Charles Reynolds retained various receipts for gas, maintenance and repairs, and during the subsequent audit, he attempted to categorize each expense and to apportion it to the appropriate activities.

Nonetheless, the IRS denied the automobile and travel deductions on various grounds, including failure to comply with the substantiation requirements of 26 U.S.C. § 274(d). After the IRS had made several other adverse rulings that are not pertinent to this appeal, the agency calculated deficiencies of $4,732 and $3,092 for the 1993 and 1994 tax years, respectively, together with corresponding accuracy-related penalties of $946 and $618, respectively.

In August of 1997, the Reynolds petitioned the U.S. Tax Court for a redetermination of their 1993 and 1994 tax liability. In March of 1998, while this matter was still pending before the Tax Court, the Reynolds apparently sent a letter of inquiry to the IRS problem resolution office in Kansas City, Missouri, with respect to their 1993 and 1994 tax liabilities. It is important to note that this inquiry was not directed to the district counsel for the IRS, who was representing the respondent in the ongoing dispute before the Tax Court. A month later, the Reynolds received two short letters from the IRS, one pertaining to 1993 and the other to 1994, that were identically worded with the exception of the specific tax amounts peculiar to each. After listing credit adjustments for each year, both letters listed "the amount you now owe" as "none."

In April 1999, the case went to trial, and the Reynolds asserted that the IRS correspondence was tantamount to a binding admission by the government that estopped it from litigating the present case. The Tax Court rejected this argument as contrary to well-established law. The court went on to consider various testimony and exhibits, issuing a decision in part for the Reynolds and in part for

the IRS. The restated liability was $2,422 and $1,937 for the 1993 and 1994 tax years, respectively, together with corresponding accuracy-related penalties of $484.40 and $387.40, respectively. Although the amount in controversy in the case is relatively small, the Reynolds assert that this appeal is being brought "to purge the taint on [Charles Reynolds'] reputation arising from the negligence penalty assessed against him." We agree that money is not the measure of all things worth fighting for, and the issues raised here are, for the most part, serious.

## II.

Pursuant to 28 U.S.C. § 2072, decisions of U.S. Tax Court are reviewable by this court. *See* 28 U.S.C. § 2072. The Reynolds present four issues for review: (1) Did the Tax Court err when it refused to consider the written notices sent to the Reynolds in relation to their 1993 and 1994 tax liability? (2) Did the Tax Court err in classifying Charles Reynolds' legal defense expenditures as § 67(a) itemized personal deductions rather than as § 162(a) business expenses? (3) Did the Tax Court err in ruling that the Reynolds had failed to adequately substantiate their automobile and travel-related expenses on Schedule C (law practice), Schedule E (rental properties) and Schedule F (farming business), as required by § 274(d)? (4) Did the Tax Court err in sustaining a § 6662(a) accuracy penalty against the Reynolds for negligent underpayments of their 1993 and 1994 taxes?

Before considering each issue in turn, we note that a decision of the Tax Court is subject to the same standards of review "that we apply to district court determinations in a civil bench trial: We review factual determinations, as well as applications of legal principles to those factual determinations, only for clear error." *Cline v. Commissioner*, 34 F.3d 480, 484 (7th Cir. 1994); *accord Toushin v. Commis-*

*sioner*, 223 F.3d 642, 645-46 (7th Cir. 2000); *Fruit of the Loom, Inc. v. Commissioner*, 72 F.3d 1338, 1343 (7th Cir. 1996). However, deficiencies determined by the Commissioner are presumed to be correct and the taxpayer bears the burden of proving otherwise. *Pittman v. Commissioner*, 100 F.3d 1308, 1313 (7th Cir. 1997).

## A.

The first issue we address is whether the Tax Court erred when it refused to treat the two no-liability letters from the IRS (pertaining to the 1993 and 1994 tax years, respectively) as binding admissions. The Reynolds claim that these two documents are "uncontroverted binding admissions of no deficiency," thus mandating a judgment in their favor. However, the cases relied upon by the Reynolds in this regard all deal with "judicial admissions," which enter the litigation either through the pleadings or under Rule 36 of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("When a party in a lawsuit makes an admission in its pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome of that lawsuit." (citing Fed. R. Civ. P. 36(b))); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. . . . [They] have the effect of withdrawing a fact from contention." (quotations omitted)).

Although a judicial admission has the effect of settling an issue of fact for the purposes of the current litigation, nothing of that exalted significance is present here. The alleged admissions in this case were not furnished by the IRS as part of the record before the Tax Court. In fact, the

weight to be accorded these letters appears to be less than leaden.

The story unfolds as follows. The Tax Court scheduled the matter before us now for a trial to commence on March 2, 1998. On the day of trial, the district counsel for the IRS learned that the Reynolds had been subject to a premature deficiency assessment for the 1993 and 1994 tax years and motioned the Tax Court to return the case to its general trial docket. According to the court transcript for that date, the parties appeared to be close to settlement. The Reynolds offered no objection to the government's motion, and a continuance was granted. Shortly thereafter, the Reynolds apparently sent an inquiry to the IRS problem resolution office in Kansas City, Missouri. On April 13, 1998, that office generated the two no-liability letters, which respectively credited the Reynolds' 1993 and 1994 tax years in the exact amount at issue before the Tax Court. Both of these very short letters contained the following sentence: "This [action] is the result of your correspondence of March 18, 1998." However, a copy of the March 18, 1998 letter is not part of the record, presumably because it was sent to the IRS problem resolution office in Kansas City. If the Reynolds wanted the IRS to stipulate or to admit that the couple owed no taxes for 1993 and 1994, they should have directed their correspondence to the district counsel for the IRS, who was based in Chicago and apparently was well known to the Reynolds through previous settlement negotiations and court appearances. The Reynolds cannot obtain a judicial admission on the cheap.

At most, the two no-liability letters are extrajudicial admissions, which are admissible as evidence and may be weighed by the factfinder according to their probative value. *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) (distinguishing between a "judicial admission" and an "extrajudicial admission"); *Keller*, 58 F.3d at 1199 n.8 (distinguishing between "judicial admission" and other ad-

missions which are treated as evidence). In the case before us, the letters have virtually no probative value. The letters appear to have been computer generated and do not reference in any way the litigation that has been pending before the Tax Court. The letters state that the Reynolds' "account" was "adjusted." Because the Reynolds could not be lawfully assessed with a tax deficiency until the Tax Court issued a decision favorable to the IRS, *see* 26 U.S.C. § 6213(a), these letters most likely reflect an adjustment for a premature deficiency assessment. Unfortunately, we don't know what information the IRS office in Kansas City was acting upon because the correspondence which prompted the IRS reply is not part of the record.

Further, the settlement or closure of a civil tax dispute with the IRS is a matter controlled by statute. *See* 26 U.S.C. §§ 7121 (closing agreements), 7122 (compromises). These provisions provide the exclusive method for settling civil tax disputes with finality. *See Brooks v. United States*, 833 F.2d 1136, 1145 (4th Cir. 1987) (holding that "[s]ection 7122 is the exclusive method by which tax cases may be compromised"); *Whitney v. United States*, 826 F.2d 896, 897-98 (9th Cir. 1987) (holding that "section 7121 of the Internal Revenue Code is the exclusive means whereby tax disputes can be settled"); *Hagadone v. Commissioner*, 98 T.C.M. (RIA) 352 ("It is well established that as a general rule the Commissioner is finally and conclusively bound by an agreement with a taxpayer only if the parties enter into a closing agreement under the provisions of section 7121."). The Tax Court correctly observed that the record "is devoid of any evidence that petitioners and respondent entered into a valid closing or compromise agreement." On the evidentiary weight to be given to the no-liability letters, we are in agreement with the Tax Court. The letters get the petitioners no closer to their goal.

B.

The next issue before us is whether the Tax Court erred when it ruled that legal defense costs incurred by Charles Reynolds during the 1993 and 1994 tax years were miscellaneous itemized deductions, which are subject to the 2% floor contained in 26 U.S.C. § 67(a), rather than business expenses related to the private law practice, which are fully deductible under 26 U.S.C. § 162(a). The legal costs at issue here are related to the IRS investigation of Charles Reynolds' alleged on-the-job misconduct—i.e., that he may have been conducting his private law practice during his official hours of employment at the IRS.

The Reynolds' primary argument is that Charles Reynolds' ability to practice law on a part-time basis had to be approved through appropriate IRS channels. Thus, an adverse ruling could have led to the withdrawal of this approval and thus terminated his practice of law. The Reynolds also claim that an adverse ruling would have negatively affected Charles Reynolds' legal reputation, which would have caused him to lose law-related business. Following this logic, the Reynolds maintain that all of the legal defense costs for 1993 and 1994 ($5,615 and $2,380, respectively) were properly listed as Schedule C business expenses.

In response, the government correctly argues that this issue is governed by the "origin of the claim" doctrine, which was first articulated by the Supreme Court in *United States v. Gilmore*, 372 U.S. 39 (1963). In *Gilmore*, the taxpayer attempted to deduct substantial legal expenses incurred in protracted divorce litigation with his estranged wife as a "business" expense related to income-producing property rather than as a "personal" expense. The taxpayer justified his position by arguing that the divorce litigation involved the disposition of three car dealerships owned by the taxpayer. He contended that the conservation of

these income-producing assets depended upon his ability to retain a controlling stock interest in them.[5] Moreover, if certain scandalous allegations were proven to be true, the taxpayer's franchisor might have grounds to cancel his dealerships. The Court rejected the taxpayer's position, holding:

> [T]he characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim *arises in connection with* the taxpayer's profit-seeking activities. It does not depend on the *consequences* that might result to a taxpayer's income-producing property from a failure to defeat the claim, for . . . "that would carry us too far" and would not be compatible with the basic lines of expense deductibility drawn by Congress.

372 U.S. at 48 (emphasis in original) (footnote omitted) (quoting *Lykes v. United States*, 343 U.S. 118, 125 (1952)).

In the case before us, the origin of the claim lies in Charles Reynold's conduct as an IRS employee, not in his trade or business as a self-employed attorney. Charles Reynolds incurred these legal costs because an IRS investigation had been commenced to determine whether he was

---

[5] *Gilmore* addressed the deductibility of legal expenses related to the conservation of income-producing property under §§ 23(a), 24(a) of the 1939 Code, and its successor statutes, 26 U.S.C. §§ 212, 262, of the 1954 Code. *See* 372 U.S. at 40 & n.3. However, it is well settled in that the holding of *Gilmore* also applies to the deductibility of legal expenses under § 162(a). *See Anchor Coupling Co., Inc. v. United States*, 427 F.2d 429, 433 (7th Cir. 1970) (applying *Gilmore* to determine deductibility of legal expenses under § 162(a)); *see also Dana Corp. v. United States*, 174 F.3d 1344, 1350-51 (Fed. Cir. 1999) (same); *Kopp's Co. v. United States*, 636 F.2d 59, 60-61 (4th Cir. 1980) (same); *Nadiak v. Commissioner*, 356 F.2d 911, 912 (2d Cir. 1966) (same); *Berry Petroleum Co. v. Commissioner*, 104 T.C. 584, 618-22 (1995) (same).

practicing law during his prescribed hours of employment at the IRS. Under *Gilmore*, the business-related consequences that may flow from the IRS's inquiry—that it may result in withdrawal of IRS approval for the part-time law practice or damage to Charles Reynolds' professional reputation—do not control the question whether the fees are deductible as a business expense. Since the taxpayer bears the burden of showing that he has a right to a business deduction, *A.E. Staley Mfg. Co.*, 119 F.3d at 486, and no additional arguments have been advanced on this issue, the Reynolds cannot prevail. The disputed legal fees are properly classified as miscellaneous itemized deductions, which are subject to the 2% floor contained in § 67(a).

C.

The Reynolds next assert that the Tax Court erred when it denied deductions for various automobile and travel expenses that were purportedly made in connection with the law practice, the rental properties or farming activity. The Tax Court ruled that none of the expenses at issue were deductible because the Reynolds had failed to satisfy the substantiation requirements of 26 U.S.C. § 274(d). At the outset, we note that a determination that a taxpayer has failed to come forward with sufficient evidence to support a deduction, including a failure to comply with the § 274(d) substantiation requirements, is generally viewed as a finding of fact that is reviewed for clear error. *See*, *e.g.*, *Yoon v. Commissioner*, 135 F.3d 1007, 1012, 1016 (5th Cir. 1998) (reviewing § 274(d) ruling for clear error); *Buelow v. Commissioner*, 970 F.2d 412, 415 (7th Cir. 1992) ("The tax court determination that a taxpayer has failed to come forward with sufficient evidence to support a deduction is a factual finding subject to reversal only if found to be clearly erroneous."). The tax code precludes a deduction for various enumerated items, including auto and travel expenses,

unless a taxpayer substantiates "by [1] adequate records or [2] by sufficient evidence corroborating the taxpayer's own statement" the following five elements: the amount, date, time, place and business purpose of the expense. 26 U.S.C. § 274(d); *see also Dowell v. United States*, 522 F.2d 708, 714 (5th Cir. 1975).

Here, the Reynolds fall far short of the necessary showing. Based on the regulations under § 274(d), the Reynolds cannot avail themselves of the "adequate records" language of § 274(d) because they did not maintain logs for each vehicle in their household to reflect their use in the law practice, rental property management or farming activities. *See* 26 C.F.R. § 1.274(d)(2) (1993) (stating that substantiation by adequate records requires a taxpayer "to maintain an account book, diary, log, statement of expense, trip sheets, or similar record" that is made "at or near the time of the expenditure or use"). Although Treasury regulations implementing § 274(d) clearly state that "adequate records" are not the *only* method of establishing eligibility, alternative methods are disfavored—and for good reason. At the risk of the reader's eyes glazing over, we will quote at length the "rules of substantiation" as they appeared in the 1993 Code of Federal Regulations,[6] especially since they bear on the accuracy-related penalties that the Reynolds also appeal:

> [A] taxpayer must substantiate each element of an expenditure or use . . . by [1] adequate records or [2] by sufficient evidence corroborating his own statement . . . . A contemporaneous log is not required, but a record of the elements of an expenditure or of a

---

[6] The 1993 version governs the 1993 tax year and could have provided guidance to the Reynolds in their recordkeeping efforts. Based on our own brief review, however, the 2002 version of this regulation is substantially the same as the one in effect in 1993.

> business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use *must have a high degree of probative value* to elevate such statement or evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in paragraph (c)(2) of this section [entitled "Substantiation by *adequate records*"].

26 C.F.R. § 1.274-5T(c)(1) (1993) (emphasis added).

The implications of this passage are unmistakable. Complete, contemporaneous records are the preferred method of substantiation. Taxpayers who pursue alternative methods will have to present evidence that is equally credible and probative, which will be difficult.

When a taxpayer cannot substantiate his deduction with "adequate records," the Treasury Regulations specifically lay out the method for substantiation "by other sufficient evidence." A taxpayer must establish each element of a § 274(d) business expense "(A) By his own statement, whether written or oral, containing specific information in detail as to such element; and (B) By other corroborative evidence sufficient to establish such element." § 1.274-5T(c)(3)(i) (1993).

This alternate method was utilized by the Reynolds at trial. Specifically, Charles Reynolds testified as to the business purpose of each deduction and attempted to sub-

stantiate his account by presenting various documents that purported to reconstruct the date, amount and proper categorization of the claimed expenses. To prepare these exhibits, Reynolds relied on voluminous receipts and cancelled checks from the 1993 and 1994 tax years; a "representative" sample of these receipts was made available for inspection and then submitted into the record.

The Tax Court ultimately found this testimony and evidence unconvincing. For example, Charles Reynolds created a two-page chart entitled "Reconstruction of Mileages Driven," which categorizes his 1993 auto expenses by month and profit-making activity (i.e., law practice, farm or rental properties). At the bottom of the chart, 3,715 miles were attributed to the "farm" for trips on April 22, June 13, July 28 and October 11. However, the only elaboration of the business purpose of the trips was the term "crops," which appears next to the dates. Charles Reynolds' testimony on his farming activities also undermined his case, since the Tax Court found it "vague, confusing, and evasive." But perhaps the most damaging detail was an admission by Reynolds that no crops were grown on his farm during the 1993 tax year.

Expenses attributed to the rental properties suffered similar problems. For the 1993 tax year, the Reynolds attributed 3,646 miles and $995.30 in hotel bills to two trips to Virginia, where they own rental property. Yet, the only business explanation for this substantial deduction is the elliptical phrase "cleaning, leasing." The corroborating evidence, in combination with Charles Reynolds' testimony on the nature of these trips, simply does not have the "high degree of probative value" necessary to put it on a par with "adequate records" documentation. § 1.274-5T(c)(1); *see also Masat v. Commissioner*, 784 F.2d 573, 575 (5th Cir. 1986) (ruling that mere fact that taxpayer owns out-of-state property does not satisfy his or her burden of proving that

the travel expenses were motivated by business rather personal reasons).

Of the four corroborating summaries presented at trial, the 1993 chart is the most comprehensive breakdown. Unfortunately, it does not contain the type of specific detail mandated by the Treasury Regulations; all of the travel and car maintenance expenses are listed by month rather than by specific trip. *See* § 1.274-5T(c)(3)(i) (in the absence of contemporaneous written evidence, requiring "specific information in detail" as to each element of a § 274(d) deduction). The listed figures are presumably the sum of adding together the voluminous receipts, though only "representative" receipts were included in the record.[7] But as the Tax Court correctly observed, many of these receipts are for automobile repairs having no apparent relationship to any particular trip or business. Section § 274(d) requires the taxpayer to prove the amount, date, time, place and business purpose of each claimed expense. The existence of these elements simply cannot be discerned in any of the Reynolds' reconstructed summaries.

The automobile and travel expenses for the Reynolds' farming activities (Schedule F) and rental properties (Schedule E) clearly fail because of inadequate substantiation. *See* 26 C.F.R. § 1.274-5T(c)(1) (stating that non-contemporaneous evidence "must have a high degree of probative value" to establish eligibility for deduction). Although

---

[7] The government emphasizes the fact that the Reynolds' "representative" sample is both incomplete and arbitrary in what is does and does not support, but additional receipts would not have helped the Reynolds' case. Rather, the testimony and corroborating summaries, which were presented at trial, were insufficient to establish the required elements of § 274(d). *See Dowell*, 522 F.2d at 714 (holding that a "virtual blizzard of bills, chits and other papers" does not satisfy the "expenditure by expenditure determination" required by § 274(d)).

we believe that the auto and travel expenses attributed to the law practice (Schedule C) share similar defects, they also suffer the more fundamental problem of being nondeductible commuting expenses.

According to Reynolds, the mileage attributed to his law practice resulted from travel between his home and a title company, where he handled several real estate closings for his clients. In general, commuting expenses between home and work are personal and therefore nondeductible. *See Commissioner v. Flowers*, 326 U.S. 465, 473-74 (1946); *accord H B & R, Inc. v. United States*, 229 F.3d 688, 690 (8th Cir. 2000) ("*Flowers* established the general rule that an employee's expenses in commuting from home to work are personal, not deductible business expenses."); 26 C.F.R. § 1.262-1(b)(5) ("The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses."). However, if a taxpayer maintains a home office as a principal place of business, and periodically travels to other sites to meet with clients or otherwise conduct their business, then these traveling costs are deductible as a business expense. That said, the taxpayer bears the burden of producing sufficient evidence to show that his "principal place of business" is, in fact, a home office. *Browning v. Commissioner*, 890 F.2d 1084, 1087 (9th Cir. 1989). Here, the Tax Court noted that during the 1993 and 1994 tax years, Charles Reynolds failed to claim a home office deduction. While failure to claim the deduction alone does not settle the issue of the traveling costs, the court also stated that Charles Reynolds "offered no evidence and made no argument that his 'principal place of business' was at his home." Notwithstanding conclusory assertions contained in the Reynolds' brief, the record, as we read it, wholly supports this assessment. Therefore, we conclude that none of the Schedule C auto and travel expenses are deductible.

D.

The final issue on appeal is whether the Tax Court erred in upholding an accuracy-related penalty under 26 U.S.C. § 6662 for the negligent underpayment of income taxes. The term "negligence" is defined by statute to include "any failure to make a reasonable attempt to comply with the provisions of this title." § 6662(c). The 1993 implementing regulation states:

> The term negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.

26 C.F.R. § 1.662-3(b)(1) (1993). At the outset, we note that a finding of negligence under § 6662 is a finding of fact that we review for clear error. *See Hayden v. Commissioner*, 204 F.3d 772, 775 (7th Cir. 2000). In addition, determinations of negligence by the Commissioner "are presumed to be correct, and the taxpayer has the burden of proving that the penalties are erroneous." *Id.* (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Forseth v. Commissioner*, 845 F.2d 746, 749 (7th Cir. 1988)).

The Reynolds attempt to rebut the presumption of correctness by claiming that they have satisfied the "good faith" affirmative defense, which is also provided by statute. The relevant provision states that no penalty shall be imposed for underpayment of taxes if the taxpayer can demonstrate "that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." 26 U.S.C. § 6664(c). The Treasury Regulation that implements this statute further elaborates:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts

and circumstances. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the *experience, knowledge and education of the taxpayer*.

26 C.F.R. § 1.6664-4(b)(1) (1993) (emphasis added). Here, the "experience, knowledge and education" proviso is fatal for Charles Reynolds, who is a licensed attorney, certified public accountant and IRS audit supervisor.[8]

As evidence of good faith, the Reynolds argue that they classified their 1993 and 1994 using the CCH Master Tax Guide, which is a treatise containing annotations to relevant statutes, regulations and case law. Assuming *arguendo* that reliance on an established secondary source can be the basis of a § 6664(c) good-faith defense, the Reynolds fail to direct us to the specific passages of the CCH Master Tax Guide upon which they reasonably relied.

The Reynolds next assert that their 1994 tax return was prepared using a commercial software program called Turbo Tax, which they claim is a "tax preparer" and is subject to IRS penalties. *See* Rev. Rul. 85-187, 1985-2 C.B. 338 (stating that a firm "that furnishes a computerized tax return preparation service to tax practitioners is an income tax preparer when the program used goes beyond mere mechanical assistance"). This argument, however, goes nowhere. In order to demonstrate an "honest misunderstanding of fact or law" under § 1.6664-4(b)(1), the Reynolds must at least make the threshold showing that reliance on Turbo Tax caused them to make substantive errors in their

---

[8]   During cross-examination at trial, Charles Reynolds stated that he is a licensed CPA in the state of South Carolina. In addition, Reynolds is now retired from the IRS.

tax preparation. Even then, the mere fact of reliance may not be enough. *See* § 1.6664-4(b)(1) (1993) ("Reliance on an information return or on the advice of a professional (such as an appraiser, attorney or accountant) does not necessarily demonstrate reasonable cause and good faith.").

Finally, the Reynolds defend their failure to allocate their automobile expenses to Schedules C, E and F as the "considered judgment of a tax professional who recognized that absolutely NO tax impact flowed from the allocation itself." The gist of the Reynolds' argument is that no tax consequences flow from the apportionment of expenses between the Schedules since they all constitute "above-the line" deductions used to calculate adjusted gross income. Yet, the fact that all the claimed deductions were above-the-line obscures the more fundamental problem that a more precise allocation was not made because the Reynolds' business records were not adequately organized and thorough. At trial, Charles Reynolds stated that "[a] more rigorous application of the allocation guidelines or the application of the mileage guidelines between Schedules C, Schedules E and Schedule F would have required a substantial amount of work, okay, in terms of . . . tying the receipts back to support the mileage in each of these items." But without making these allocations, the required elements of substantiation under § 274(d) cannot be met. Because of his substantial education and experience in tax law and administration, we must impute basic knowledge of the elements of substantiation to Charles Reynolds. We therefore uphold the § 6662(a) accuracy-related penalties in their entirety.[9]

---

[9] The accuracy-related penalties are calculated in relation to specific underpayments. However, with the exception of an unfocused argument on auto and travel expenses, the Reynolds's brief did not make good-faith defense arguments directed at any specific underpayment penalty. The fact that the Reynolds failed

(continued...)

### III.

For the forgoing reasoning, the judgment of the Tax Court is AFFIRMED.

A true Copy:

     Teste:

                                 _____

                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*

---

[9] (...continued)
to substantiate various travel expenses has no bearing on accuracy-related penalties for an underpayment resulting from other tax errors. For example, the Reynolds failed to make any argument that a good-faith defense applied to Charles Reynolds' legal defense fees, which were erroneously deducted during the 1993 and 1994 tax years. Without a reasoned analysis, we cannot disturb the Commissioner's negligence determination, which is presumptively correct. *See Hayden*, 204 F.3d at 775.

---