T.C. Memo. 2015-125

UNITED STATES TAX COURT

H. MICHAEL MUNIZ, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5704-14.                    Filed July 9, 2015.

H. Michael Muniz, pro se.

Brandon S. Cline and Kenneth Allan Hochman, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge: Respondent determined a deficiency in petitioner's Federal income tax for tax year 2011 of $10,952 and an accuracy-related penalty pursuant to section 6662(a) of $2,190.[1] The issues for decision are whether petitioner is

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*2]** (1) entitled to an alimony deduction for a lump sum paid to his former wife in 2011, and (2) liable for an accuracy-related penalty pursuant to section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in the State of Florida when the petition was filed. Petitioner has been an attorney licensed in the State of Florida since 1999. Additionally, petitioner obtained a certified public accountant (C.P.A.) license in 1996 which he has since placed on inactive status.

Petitioner and his former wife, Annette Filippini, were married on June 20, 2004. On October 12, 2009, Ms. Filippini filed an amended petition for dissolution of marriage and other relief in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

Petitioner and Ms. Filippini executed a partial mediated marital settlement agreement (MSA) on December 8, 2009. Paragraph 7 of the MSA sets out the terms of alimony between petitioner and Ms. Filippini. Under the terms of this

---

[1](...continued)
Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] paragraph, petitioner was obligated to pay nonmodifiable bridge-the-gap alimony[2] to Ms. Filippini of $1,000 per month, subject to certain requirements based on his income. Additionally, petitioner was obligated to pay $409 for health insurance for Ms. Filippini and her son for three months, followed by the lesser of $500 per month or the actual cost of health insurance for nine months. Apart from the terms set out regarding nonmodifiable bridge-the-gap alimony, Ms. Filippini waived all other claims to "permanent and periodic alimony, lump-sum alimony and/or rehabilitative alimony".

Petitioner and Ms. Filippini entered into an agreed order on payment of wife's alimony by husband (first order) on November 8, 2010. The first order required petitioner to pay Ms. Filippini $6,000 in satisfaction of the alimony ordered under the MSA. Petitioner satisfied his alimony obligations under the MSA and the first order in November 2010. Circuit Judge Charles Burton reserved ruling on Ms. Filippini's request for attorney's fees and costs.

Petitioner and Ms. Filippini subsequently entered into an agreed order (second order) on May 6, 2011, resolving all remaining issues in their divorce

---

[2]Under Florida law, bridge-the-gap alimony is intended to assist a former spouse with short-term needs and may not exceed two years in duration. Fla. Stat. Ann. sec. 61.08(5) (West 2006 & Supp. 2015). Bridge-the-gap alimony terminates upon the death of either party or upon the remarriage of the recipient. Id.

[*4] proceeding. The second order obligated petitioner to pay $45,000 to Ms. Filippini. Ms. Filippini testified at trial that the $45,000 payment was a settlement for attorney's fees and the division of marital assets and was not intended to be alimony. Ms. Filippini did not claim the $45,000 as alimony on her 2011 Federal income tax return. Judge Burton entered a final judgment of dissolution of marriage (final judgment) on May 31, 2011. The MSA and the second order were incorporated into, but not merged into, the final judgment. The final judgment stated that the MSA and the second order "shall in all respects survive the Final Judgment and be forever binding and conclusive upon the parties."

Through Ms. Filippini's attorney, petitioner paid $45,000 in satisfaction of the second order on July 5, 2011. On July 13, 2011, Ms. Filippini served upon petitioner Former Wife's Notice of Former Husband's Compliance With Final Judgment and Order Dated May 6, 2011.

Respondent mailed the notice of deficiency to petitioner on February 5, 2014. The notice of deficiency determined that the $45,000 payment to Ms. Filippini did not constitute alimony under section 71 and was therefore not deductible by petitioner. Petitioner timely petitioned the Court for review on March 13, 2014.

[*5]                              OPINION

## I.    Burden of Proof

The Commissioner's determination as to a taxpayer's tax liability is generally presumed correct, and the taxpayer bears the burden of proving otherwise.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace.  Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers must comply with specific requirements for any deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. at 440.  Taxpayers must also maintain adequate records to substantiate the amounts of any credits and deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

## II.    Alimony Deduction

Section 215(a) allows as a deduction an amount equal to the alimony or separate maintenance payments paid by an individual during such individual's tax year.  Section 71(b)(1) defines an alimony or separate maintenance payment to be any payment made in cash that satisfies the following conditions:  (1) the payment is received by (or on behalf of) a spouse under a divorce or separation agreement; (2) the divorce or separation agreement does not designate the payment as a

[*6] payment which is not includible in gross income under section 71 and not allowable as a deduction under section 215; (3) in the case of an individual who is legally separated from his spouse under a decree of divorce or separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time the payment is made; and (4) there is no liability to make a payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse. A divorce or separation agreement executed after December 31, 1984, does not need to expressly state that payments cease upon the death of the payee spouse as long as State law provides for automatic termination of payments upon the death of the payee spouse. See Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1843(b), 100 Stat. at 2853.

Respondent argues that petitioner's payment of $45,000 to Ms. Filippini does not meet the requirements of section 71(b) and therefore he cannot deduct it as alimony. In the notice of deficiency respondent noted that a lump-sum payment under Florida law creates a vested right in the payee which would not end upon the payee's death. Petitioner filed a motion for summary judgment on October 8, 2014, which the Court denied on November 12, 2014. In respondent's response to petitioner's motion for summary judgment (response) on October 31, 2014,

**[\*7]** respondent raised, for the first time, doubt as to whether the $45,000 payment was "for support or for a property settlement". At trial respondent again argued that the payment was not alimony, pointing to the provision for alimony in the MSA and the incorporation of the MSA into the final judgment as well as petitioner's satisfaction of the first order in November 2010.

Petitioner argues that respondent "waived any challenge" to the nature of the $45,000 payment when he did not dispute the nature of the payment in the notice of deficiency. We interpret petitioner's argument to mean that the alternative rationale that respondent raised in his response is a "new matter" within the meaning of Rule 142(a), and therefore respondent bears the burden of proof with regard to this argument. We do not agree that respondent raised a new matter by arguing that the $45,000 payment was not alimony. The notice of deficiency informed petitioner that the payment was not deductible because it did not meet the requirements for a deductible alimony payment. A new position taken by the Commissioner is not necessarily a new matter if it merely clarifies or develops the original determination and is consistent with or does not increase the amount of deficiency. Estate of Jayne v. Commissioner, 61 T.C. 744, 748-749 (1974) (citing McSpadden v. Commissioner, 50 T.C. 478, 492-493 (1968)). Respondent's argument advanced in his response involves the same Code section,

[*8] does not affect the amount of the deficiency, and is consistent with his original determination that the $45,000 payment was not deductible. See id.

Examination of the various documents related to petitioner's divorce from Ms. Filippini indicates that the $45,000 payment does not appear to be an alimony payment. First, the MSA ordered petitioner to pay nonmodifiable, bridge-the-gap alimony to Ms. Filippini in monthly amounts that, when totaled, do not add up to $45,000, and Ms. Filippini waived her rights to all other forms of alimony from petitioner. Second, petitioner satisfied his alimony obligations under the MSA and the first order in 2010. Thus, the $45,000 payment appears to be a property settlement, which is not deductible under section 215, rather than a deductible alimony payment. See sec. 1041(c).

However, the $45,000 payment satisfies the first three requirements of section 71(b)(1). The payment was made to Ms. Filippini under a divorce or separation agreement that did not designate the payment as a payment which is not includible in gross income under section 71 and not allowable as a deduction under section 215. See sec. 71(b)(1)(A) and (B). Further, petitioner and Ms. Filippini were not members of the same household at the time the payment was made. See sec. 71(b)(1)(C). That leads us to the fourth requirement of section 71(b), that the obligation to make the $45,000 payment terminate in the event of

[*9] Ms. Filippini's death. See sec. 71(b)(1)(D). If it did terminate, and we conclude that the payment is alimony and not a property settlement, the payment is deductible under section 215(a). The second order does not specify whether petitioner would have been liable to make the $45,000 payment if Ms. Filippini had died before the payment was made. We must look to Florida law to determine petitioner's liability in this regard. See Sampson v. Commissioner, 81 T.C. 614, 618 (1983), aff'd without published opinion, 829 F.2d 39 (6th Cir. 1987).

Petitioner argues that the payment was lump-sum alimony. Florida law recognizes lump-sum alimony. Fla. Stat. Ann. sec. 61.08(1) (West 2006 & Supp. 2015); Canakaris v. Canakaris, 382 So. 2d 1197, 1200 (Fla. 1980). Lump-sum alimony under Florida law creates a vested right in the payee spouse which does not terminate upon the payee spouse's death. Canakaris, 382 So. 2d at 1201 ("[T]here does arise upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification."); Boyd v. Boyd, 478 So. 2d 356, 357 (Fla. Dist. Ct. App. 1985) ("By definition, 'lump-sum alimony' is a fixed and certain amount, the right to which is vested in the recipient and which is not therefore subject to increase, reduction, or termination in the event of any contingency, specifically including those of death or remarriage."). Lump-sum alimony under Florida law creates a

**[*10]** vested right in the payee spouse which survives the payee spouse's death and therefore fails to satisfy the condition set out in section 71(b)(1)(D). Thus, under Florida law, lump-sum alimony constitutes a property settlement for Federal income tax purposes. See Rood v. Commissioner, T.C. Memo. 2012-122 ("[W]e find that the payments were for a definite sum and in the nature of a final property settlement[.]"); Filipov v. Filipov, 717 So. 2d 1082, 1084 (Fla. Dist. Ct. App. 1998) ("Lump-sum alimony is essentially payment of a definite sum and is in the nature of a final property settlement[.]"). Accordingly, assuming petitioner's $45,000 payment was intended by petitioner and Ms. Filippini to be lump-sum alimony, that payment is nevertheless a property settlement under Florida law and is not deductible for purposes of section 215(a).

Petitioner urges us to consider that his liability to make further payments to Ms. Filippini was extinguished as soon as he rendered payment to her. Unfortunately for petitioner, that is not the test mandated by the Code or the laws of the State of Florida. Petitioner's $45,000 payment to Ms. Filippini fails to satisfy the requirements for alimony under section 71(b)(1) and is not deductible under section 215(a).

**[*11]** III.    Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to negligence or disregard of rules or regulations, or any substantial understatement of income tax.  Section 6662(d)(1)(A) defines a substantial understatement as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000.  Section 6662(d)(2)(A) defines "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate.

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty.  Higbee v. Commissioner, 116 T.C. at 446.  However, once the Commissioner has met the burden of production, the taxpayer has the burden of proof, including the burden of proving that the penalty is inappropriate because of substantial authority or reasonable cause under section 6664.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-449.

**[\*12]** The understatement of income tax is $10,952, which is greater than $5,000, which is in turn greater than 10% of the tax required to be shown on the return. Thus, the understatement is substantial for purposes of the section 6662(a) accuracy-related penalty. We conclude that respondent met his burden of production in showing that petitioner substantially understated his income tax for tax year 2011.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if it can be shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Factors to be considered include the taxpayer's efforts to assess the proper tax liability; the taxpayer's knowledge, education, and experience; and reliance on the advice of a tax professional. Id.

Petitioner did not address the section 6662(a) penalty in his pretrial memorandum, but at trial he stated that he claimed the alimony deduction in good faith after he "thought about [it] deliberately". Petitioner did not elaborate on what sources he used to determine his proper tax liability, nor did he consult a tax

[*13] professional for advice on the issue.  Petitioner is a licensed attorney who at one point held an active C.P.A. license.  His education and experience should have alerted him to the fact that alimony is not deductible under section 215(a) unless it satisfies the requirements of section 71(b).  See, e.g., Reynolds v. Commissioner, 296 F.3d 607, 618 (7th Cir. 2002) (upholding the section 6662(a) penalty against a taxpayer who was a licensed attorney and C.P.A.), aff'g T.C. Memo. 2000-20; Argyle v. Commissioner, T.C. Memo. 2009-218, 98 T.C.M. (CCH) 259, 263-264 (2009), aff'd, 397 Fed. Appx. 823 (3d Cir. 2010) (upholding the section 6662(a) penalty against a C.P.A. taxpayer).  Petitioner has not met his burden of proving that he acted in good faith and with reasonable cause, and we sustain the section 6662(a) accuracy-related penalty.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.
