T.C. Memo. 2009-218

UNITED STATES TAX COURT

VON H. ARGYLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6820-08.            Filed September 17, 2009.

Von H. Argyle, pro se.

<u>Edward J. Laubach, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and
penalties with respect to petitioner's Federal income taxes as
follows:

| Year | Deficiency | Penalty<br>I.R.C. Sec. 6662(a) |
|------|------------|-------------------------------|
| 2004 | $7,478 | $1,495.60 |
| 2005 | 3,606 | 721.20 |
| 2006 | 10,607 | 2,121.40 |

Except as otherwise stated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

(1) Whether petitioner's filing status was single during the years in issue, when he was separated from but still married to his spouse;

(2) whether petitioner is entitled to deduct attorney's fees and related expenses incurred in defending a criminal proceeding;

(3) whether petitioner is entitled to deduct expenses on Schedule C, Profit or Loss From Business, beyond those conceded by respondent;

(4) whether petitioner is entitled to deduct a net operating loss carryforward from 2005 to 2006;

(5) whether petitioner is liable for the additional tax under section 72(t) for early withdrawals from a retirement plan; and

(6) whether petitioner is liable for the section 6662 accuracy-related penalty for each of the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Pennsylvania at the time that he filed his petition. Petitioner has a master's degree in accounting with a major in tax and has been a certified public accountant (C.P.A.) since 1983. During 2004, 2005, and 2006, petitioner was a practicing C.P.A. licensed in the State of Ohio.

From January through August 2004, petitioner used residential property on Washington Boulevard in Grove City, Pennsylvania, as his office. From September 1, 2004, through at least December 31, 2006, petitioner used the same property as his residence.

At all material times petitioner has been married. Although petitioner's wife filed for divorce in August 2004 and petitioner and his wife lived separate and apart during the years in issue, they were neither divorced nor parties to a decree of separate maintenance.

During 2004, petitioner performed accounting and tax preparation services for a medical services client in Newcastle, Pennsylvania, approximately 40 miles from petitioner's home in Grove City. Among the client's employees was a 20-year-old woman whose job included transcribing doctors' notes, maintaining patient charts, and observing examinations of female patients by

doctors.  Before May 28, 2004, petitioner and the client's employee had meals together on two occasions. Petitioner gave the employee $1,000 so that she could buy a car.

On May 28, 2004, petitioner allowed the employee to drive him to his home in his BMW automobile.  They arrived at his home about 5 p.m., and she stayed until 10 p.m. or 11 p.m., leaving in his automobile.  While she was at petitioner's home, petitioner kissed the employee.  Thereafter, the employee instituted criminal charges against petitioner.  Petitioner pleaded "no contest" and was convicted of simple assault relative to the events of May 28, 2004.  More serious charges that had been filed against him were dismissed and expunged from his record.

During the criminal proceedings against him, petitioner was represented by Paul Gettleman.  Petitioner paid Gettleman $12,500 during 2004, $25,000 in 2005, and $25,000 in 2006.  In 2004, petitioner also paid $645 to an investigator hired by Gettleman. On Schedules C attached to his Federal income tax returns for the years in issue, petitioner deducted the fees paid to Gettleman and to the investigator as "legal and professional services" without any further disclosure of the context in which they were incurred.  Petitioner also deducted an additional $10,000 in legal fees that he claims was paid in 2005, but he has no evidence substantiating that payment.

During 2004, 2005, and 2006, petitioner withdrew $10,000, $25,000, and $20,000, respectively, from his individual retirement accounts.  Petitioner was under 59-1/2 years old during those years.  Petitioner paid qualified higher education costs for his son totaling $6,001 in 2004, $8,693 in 2005, and $4,526 in 2006.

Petitioner attached Forms 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to his Federal income tax returns for the years in issue.  As directed on those Forms 5329, petitioner reported the "Early distributions included in income" on line 1.  On line 2 of the Forms 5329, he claimed "Early distributions included on line 1 that are not subject to the additional tax" in amounts equal to the amounts reported on line 1, thus reporting that he owed no additional tax under section 72(t).

                            OPINION

In the stipulation, respondent has conceded various deductions disallowed in the statutory notice of deficiency. Respondent has also stipulated payments substantiated by petitioner but disputed as to deductibility.  Certain of the issues, as discussed below, are legal issues not dependent on burden of proof.

As applicable to the factual issues, section 7491(a) provides in relevant part that the burden of proof shifts from the taxpayer to the Commissioner if the "taxpayer introduces credible evidence", has complied with the requirements to substantiate items, and has maintained required records.  Section 7491(c) imposes on the Commissioner the burden of production with respect to any penalty, but the taxpayer must then establish that the penalty does not apply.  See generally Higbee v. Commissioner, 116 T.C. 438 (2001).

Unless the burden of proof has shifted under section 7491(a) or some exception not present in this case exists, the taxpayer has the burden of proving that the claimed expenses were ordinary and necessary business expenses rather than nondeductible personal expenses.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 113-114 (1933); see Rule 142(a).

We are not required to accept testimony that is improbable or implausible.  See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. T.C. Memo. 1969-159; Shea v. Commissioner, 112 T.C. 183, 189 (1999).  In this case, particularly in view of his training and experience as a C.P.A., the absence of corroboration of his testimony by witnesses or reliable records leads us to conclude that petitioner has not

carried his burden of proof as to the factual issues.  See <u>Shea</u> <u>v. Commissioner</u>, <u>supra</u> at 188.

<u>Filing Status</u>

Petitioner stipulated that he was married during the years in issue, but he contends that he was entitled to file his Federal income tax returns for 2005 and 2006 using rates applicable to single taxpayers.  Respondent contends that petitioner's filing status is married filing separately.  This issue is thus one of law.

Petitioner relies on Pennsylvania law and cases in other contexts to argue that his "separate and apart" status determines his rights and those of his wife and "confers single filing status."  It appears, however, that the authorities on which petitioner relies recognize "separate and apart" as a factor only in determining property rights of the spouses.

Section 7703(a) states the general rule for determination of marital status as of the close of a taxable year and provides that "an individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married."  Sec. 7703(a)(2).  Section 7703(b) sets out the conditions under which married individuals living apart shall not be considered married for purposes of section 151, personal exemptions and head of household filing status.  Neither subsection allows petitioner to be treated as not married.

In Keibler v. Commissioner, T.C. Memo. 1980-75, we concluded that only an absolute divorce effects a legal separation in Pennsylvania as relevant to a taxpayer's filing status on his Federal income tax return. Although we there applied former section 153, as applicable to 1974, the decisive language now appears in section 7703(a). We rejected the taxpayer's argument that living separate and apart was the equivalent of an absolute divorce under Pennsylvania law. Petitioner has not cited any authority that would lead to a different result in this case, and he acknowledges that "Pennsylvania cases suggest that there is no such thing as a decree of 'legal separation' which a court can order for married parties who live apart". Because petitioner is neither divorced nor a party to a decree of separate maintenance, he is not entitled to single filing status.

Legal Fees

The parties agree that the test for deductibility of the legal expenses petitioner claimed in relation to the criminal proceedings brought against him is the origin and character of the claim involved, under United States v. Gilmore, 372 U.S. 39 (1963). Petitioner asserts that the proceedings against him were instituted as retaliation by the client's employee because he reprimanded her for misconduct in the client's business. Thus, he argues, the origin of the claim is his business activity, rendering the legal fees that he incurred deductible.

Petitioner's posttrial brief asserts many facts that are not in the record and cannot be considered. See Rules 143(b), 151(e)(3). Petitioner's factual assertions, however, suggest that corroborating witnesses should have been available if his claims are accurate. He did not call Gettleman as a witness, even though an unsubstantiated amount of $10,000 allegedly paid to Gettleman in 2005 is in dispute. He did not call any other witness who might have been available to corroborate his claim that the employee was dishonest in her services to the client.

Respondent contends that the fees relating to the criminal proceedings were nondeductible personal expenses comparable to those in cases involving criminal assault charges, such as Nadiak v. Commissioner, 356 F.2d 911 (2d Cir. 1966), affg. T.C. Memo. 1964-291; Kelly v. Commissioner, T.C. Memo. 1999-69; Siket v. Commissioner, T.C. Memo. 1978-124; and Michaelis v. Commissioner, T.C. Memo. 1971-199. As demonstrated in the cases cited by respondent, successful defense of criminal charges is not determinative under the origin of the claim test.

Respondent relies on petitioner's testimony regarding the events of May 28, 2004, as establishing the personal nature of the relationship between petitioner and his client's employee. As petitioner testified: The alleged assault occurred at petitioner's residence 40 miles from the client's place of business, after the employee drove petitioner to his residence in

petitioner's car and spent 5 or more hours at his house between 5 p.m. and 11 p.m.  Petitioner had gone to dinner with the employee on at least two prior occasions, kissed her on May 28, 2004, and did not deny kissing her on other occasions.  Petitioner had given the employee $1,000 so that she could buy a car.

We agree with respondent.  The preponderance of the evidence is that the legal fees for defending the criminal proceedings arose out of a personal relationship and are not deductible business expenses.

Other Schedule C Expenses

At trial petitioner presented a spreadsheet representing various items claimed as business expense deductions.  He did not, however, establish by his testimony any items that respondent had not previously conceded in the stipulation.  He asserts that all of the claimed deductions were ordinary, necessary, and substantiated and that his returns were correct when filed.  He admitted during his testimony, however, that a portion of his deductions for mortgage interest on the property that he occupied as his office and his residence had been duplicated as itemized deductions on Schedule A, Itemized Deductions, and as business expenses on Schedule C.  He deducted vehicle expenses using a combination of actual expenses and business mileage, rather than an acceptable alternative of either but not both.  See sec. 1.274-5(j)(2), Income Tax Regs.; Rev.

Proc. 2004-64, sec. 5.03, 2004-2 C.B. 898, 900; Rev. Proc. 2005-78, sec. 5.03, 2005-2 C.B. 1177, 1179; see also, e.g., <u>Nash v. Commissioner</u>, 60 T.C. 503, 520 (1973); <u>Clark v. Commissioner</u>, T.C. Memo. 2002-32. He claims that he is entitled to use section 280A(d)(4)(A) to deduct all of the expenses concerning the home used as an office before September 1, 2004, but that section relates only to rental property. The property petitioner occupied was not rental property during any of the years in issue.

Petitioner did not establish during trial the portion of the residential property that was used exclusively for business, as required by section 280A(c), and he apparently deducted as business expenses unallocated items, such as utilities and repairs, that related to the residence. Respondent nonetheless conceded a portion of the claimed home office expense, and petitioner has not shown that he is entitled to a greater amount.

Petitioner did not substantiate travel and meals expenses by time, place, and business purpose as required by section 274(d), and he testified that he did not know whether he reduced the cost of business meals by 50 percent as required by section 274(n). He also testified that some of the other amounts claimed on his returns were only estimates. Petitioner's general assertions as to deductibility are thus unreliable, and no deductions beyond those respondent conceded are allowed.

Net Operating Losses

Petitioner claimed a $25,744 net operating loss carryover from 2005 to 2006. The loss claimed for 2005 included $35,000 of erroneously deducted legal fees, $10,000 of which was unsubstantiated. The claimed loss also included lesser items now disallowed. Therefore petitioner did not establish that he was entitled to any net operating loss carryover.

Section 72(t)

Section 72(t) imposes a 10-percent additional tax on early distributions from retirement plans, subject to certain exceptions. The exceptions petitioner asserts are for distributions used to pay qualified higher education expenses under section 72(t)(2)(E) and medical insurance costs for unemployed individuals under section 72(t)(2)(D).

Respondent has conceded the amounts petitioner paid for his son's tuition, fees, books, supplies, and equipment and an allowance for room and board, less scholarships received. The parties dispute whether transportation expenses incurred in relation to petitioner's son's attendance at college are qualified higher education expenses.

Section 72(t)(2)(E) provides the exception to the 10-percent additional tax on early distributions from retirement plans for higher education expenses defined under section 72(t)(7), which

in turn incorporates section 529(e). Respondent argues that transportation costs are not included in the definitions of qualified expenses in section 72(t)(7) or 529(e)(3) and, in any event, petitioner has not proven the amount of transportation expenses he actually incurred. Petitioner wishes to incorporate transportation expenses into the definition of qualified expenses on the basis of section 472 of the Higher Education Act of 1965, 20 U.S.C. section 1087ll, and claims deductions based on estimates in the catalog of the college attended by his son.

Section 529(e)(3) does not include transportation expenses as qualified higher education expenses and incorporates section 472 of the Higher Education Act of 1965 only as a limitation on an allowance for room and board. There is neither logic nor authority supporting petitioner's attempt to add transportation expenses as a qualified higher education expense for purposes of section 72(t)(2)(E), and he is not entitled to use third-party estimates rather than evidence to prove that he actually incurred expenses.

Section 72(t)(2)(D) provides that the 10-percent additional tax on early distributions does not apply to distributions for health insurance premiums. Under section 72(t)(2)(D)(iii) a self-employed individual may qualify for this exception if he would have received unemployment compensation but for the fact that he was self-employed. Petitioner has not established that

he would be eligible for unemployment compensation if he had not been self-employed or that he used any part of the distributions from his retirement plan to purchase health insurance. Petitioner claims that he receives health insurance through his spouse's employer and seeks to deduct amounts that he paid to his spouse for homeowner's and automobile insurance as the equivalent of health insurance premiums. Again petitioner's uncorroborated testimony and generalized assertions do not satisfy his burden of proving the amount of the expenditures or that they qualify for the exemption from the section 72(t) additional tax.

Finally, petitioner argues that respondent incorrectly calculated the section 72(t) additional tax on the early distribution after allowing for conceded qualified higher education expenses. Section 72(t) imposes a tax on early withdrawals because they "frustrate the intention of saving for retirement, and section 72(t) discourages this from happening." Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213). The tax is imposed on "the portion of such amount [received from a qualified plan] which is includible in gross income." Sec. 72(t)(1). Respondent does not contest the portion includible in gross income as reported by petitioner on his returns.

Petitioner argues that the amounts excepted under section 72(t)(2) should be deducted solely from the distribution includible in gross income.  For example, the portion of the withdrawal of $10,000 for 2004 that was includible in gross income was $6,400.  The conceded amount of qualified higher education expenses is $6,001.  Petitioner argues that the tax is 10 percent of $399 ($6,400 - $6,001).

Respondent contends that section 72(t)(2)(E) refers to gross or total distributions, not just distributions includible in gross income.  Respondent's position is that the additional tax imposed by section 72(t)(1) is on the lesser of the distribution includible in gross income or the gross distribution remaining after reduction for qualified higher education expenses.  As a result, the amounts excepted from the 10-percent additional tax are deducted first from the portion of the distribution not includible in gross income.  Respondent does not cite, and we have not found, any authority supporting respondent's calculation.

The amount subject to additional tax under section 72(t)(1), i.e., the amount includible in gross income, is reduced for distributions used for certain specified purposes listed in section 72(t)(2), including qualified higher education expenses specified in section 72(t)(2)(E).  Respondent has given us no reason why, in the context of section 72(t), exceptions to the

10-percent additional tax should be used first to offset nontaxable distributions. Petitioner's methodology is consistent with the Forms 5329 prescribed by the Internal Revenue Service and submitted with petitioner's returns for the years in issue. On this point, we agree with petitioner.

Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or a substantial understatement of income tax. Section 6662(d)(1)(A) defines "substantial understatement of income tax" as an amount exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000. In this case, a Rule 155 computation will be required because of respondent's concessions and our determination with respect to the section 72(t) additional tax computation. Respondent asserts that a substantial understatement of income tax will exist for 2006 but that the penalty should be based on negligence for 2004 and 2005.

Respondent argues that petitioner was a well-educated C.P.A., with a master's degree in accounting and a major in taxation, who has practiced since 1983. Respondent points out that petitioner deducted travel expenses without maintaining the substantiating records required under section 274(d) or reducing

the amounts claimed by 50 percent of the meals as required under section 274(n); he duplicated mortgage expense deductions; he deducted utilities and repairs on his office in the home without regard to the income limitations of section 280A(c)(5); he used an improper method for vehicle expenses; and he claimed legal fees as a business deduction when he should have known that those expenses were personal.

The accuracy-related penalty under section 6662(a) will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner asserts that "All accounting measures are estimates subject to multiple interpretations." He claims to have researched all of the contested deductions, but he has provided no substantial authority for those that have been disallowed as being personal legal expenses or deductions claimed contrary to the express provisions of section 274(d) or 280A. See sec. 6662(d)(2)(B)(i); sec. 1.6662-4(d)(3), Income Tax Regs. He claims that "disclosure was complete" for the deduction of legal fees paid to Gettleman, but there is no disclosure on his returns of "the relevant facts affecting the item's tax treatment". See

sec. 6662(d)(2)(B)(ii).  He claims that "all contested deductions were supported by documentation", but that claim is contradicted by the record.  Petitioner's training and experience are relevant factors in considering whether he is liable for the penalty.  See sec. 1.6664-4(b)(1), Income Tax Regs.; see also Reynolds v. Commissioner, 296 F.3d 607, 618 (7th Cir. 2002), affg. T.C. Memo. 2000-20.  His training and experience support the conclusion that he was negligent in claiming the disallowed deductions.  The penalty under section 6662(a) will be sustained for each year.

In reaching our decision, we have considered all arguments made by the parties.  To the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.