T.C. Summary Opinion 2014-10

UNITED STATES TAX COURT

ROJ CARL SNELLMAN AND PATRICIA SNELLMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13186-12S.                    Filed February 3, 2014.

Roj Carl Snellman and Patricia Snellman, pro sese.

<u>Jeremy D. Cameron</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code (Code), as amended and in effect for 2009, and Rule references are to the
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $4,396 in petitioners' Federal income tax for 2009. Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). Petitioners resided in Florida at the time the petition was filed.

The issue for decision is whether petitioners are entitled to deductions for unreimbursed employee business expenses reported on Schedule A, Itemized Deductions.

## Background

During 2009 petitioners maintained their personal residence in Indialantic, Florida. Two of their four children were of school age and attended local schools in Indialantic. Petitioners owned and managed a rental real estate property in Florida.

## I. Mr. Snellman's Employment

Mr. Snellman was unemployed during the first several months of 2009. On May 26, 2009, he began work as a project manager for U.S. Fidelis, Inc. (Fidelis),

---

[1](...continued)
Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

in Wentzville, Missouri.  Fidelis marketed and sold extended automobile warranties primarily to individual customers.

Fidelis hired Mr. Snellman to manage the development of an automated interactive system to track its customers' credit card payments.  Although Fidelis informed Mr. Snellman that he would be paid an annual salary of $90,000, he understood that Fidelis expected the credit card project to be completed no later than December 31, 2009, and that his employment would end at that time.[2]

Mr. Snellman testified that a Fidelis representative told him that he would not be reimbursed for expenses related to his employment.  Fidelis did not offer to assist Mr. Snellman in moving to Missouri.

II.  Travel and Living Arrangements

On May 24, 2009, Mr. Snellman drove from his home in Florida to Missouri.  Mr. Snellman testified that he stayed in a hotel in Missouri from May 25 to June 10, 2009.

On June 11, 2009, Mr. Snellman signed a lease agreement to rent an apartment in St. Charles, Missouri, for $525 per month through December 31, 2009.  The apartment was approximately 18 miles from Fidelis' offices.

---

[2]Mr. Snellman testified that he never received a written employment contract from Fidelis and that all employment negotiations were conducted by telephone with a Fidelis representative.

Mr. Snellman negotiated an addendum to the lease agreement which stated that if he lost his job with Fidelis and provided the landlord with 30 days' written notice, he would be permitted to terminate the lease without having to pay a "lease break fee".

Fidelis began to experience financial difficulties, and Mr. Snellman's employment ended abruptly on November 2, 2009. After collecting his final paycheck, Mr. Snellman drove back to Indialantic on November 18.

## III. Petitioners' 2009 Tax Return

Petitioners filed a joint Federal income tax return for 2009 reporting the following items of income: Mr. Snellman's wages of $35,984 from Fidelis, a taxable distribution from a retirement account of $26,000, capital gains of $713, income from rental real estate activity of $21,681, and dividend income of $2.

Petitioners attached Schedule A and Form 2106-EZ, Unreimbursed Employee Business Expenses, to their return. Mr. Snellman reported on the Form 2106-EZ that he drove his vehicle 7,381 miles in connection with his employment at Fidelis. Applying the standard mileage rate of 55 cents per mile, he reported total vehicle expenses of $4,060.[3] He also reported expenses for travel while away

---

[3]The Commissioner generally updates the optional standard mileage rates annually. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of
(continued...)

from home of $27,200--an amount he derived by multiplying 160 days (the total number of days he purportedly spent in Missouri) by a per diem rate of $170 for meals, incidental expenses, and lodging.

## IV. Notice of Deficiency

Respondent disallowed the deductions petitioners claimed for unreimbursed employee business expenses described above for lack of substantiation and on the ground the expenses were not ordinary and necessary business expenses.

## V. Petitioners' Records

At trial petitioners provided written logs and invoices in an effort to substantiate the expenses described above.

### A. Mileage Log

Petitioners provided a mileage log which indicates that Mr. Snellman drove 10,621 miles between May 24 and November 18, 2009.[4] Daily entries include the date, odometer readings, total mileage, and various destinations (e.g., Fidelis, Starbucks, Walmart, Sam's Club, and various restaurants). The log does not

---

[3](...continued)
55 cents per mile for 2009 is set forth in Rev. Proc. 2008-72, sec. 2.01, 2008-2 C.B. (Vol. 2) 1286, 1286.

[4]The mileage total in the log far exceeds the mileage total that petitioners reported on Form 2106-EZ. Mr. Snellman testified that the log is a more accurate reflection of his vehicle expenses.

distinguish between transportation for business and personal purposes, nor does it indicate the distance to each destination or specify the point of origin for each trip.

Mr. Snellman testified that he "assembled" the mileage log after receiving the notice of deficiency. The record does not reflect whether Mr. Snellman maintained contemporaneous records related to his vehicle expenses and, if so, the whereabouts of those records or why he found it necessary to reconstruct them in 2012.

B. Additional Expenses

Petitioners assert that they incurred additional expenses related to Mr. Snellman's employment with Fidelis. At trial they offered receipts for auto repair charges of $962, postal service fees of $27, restaurant expenses of $430, rental car charges of $311, dry cleaning expenses of $20, cab fare of $82 from St. Charles to the airport in St. Louis, Missouri,[5] four airline invoices for round trips from Missouri to Florida totaling $1,119, and Internet and cable service charges of $247.

---

[5]Petitioners offered a second log indicating that Mr. Snellman paid $360 for round trip cab fare on four separate occasions from his apartment to the airport in St. Louis, Missouri, and that he incurred vehicle expenses of $282 (using the standard mileage rate) on four corresponding round trips from petitioners' home in Indialantic to the airport in Orlando, Florida.

C.  Parking Fees and Tolls

Petitioners claimed a deduction for parking fees and tolls of $360.  They did

not provide any evidence to substantiate these expenses at trial.

Discussion

The Commissioner's determination of a taxpayer's liability in a notice of

deficiency normally is presumed correct, and the taxpayer bears the burden of

proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290

U.S. 111, 115 (1933).  Because, as discussed below, petitioners have not complied

with the Code's substantiation requirements and have not maintained all required

records, the burden of proof as to any relevant factual issue does not shift to

respondent under section 7491(a).  See sec. 7491(a)(1) and (2); Higbee v.

Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer generally

bears the burden of proving entitlement to any deduction claimed.  Rule 142(a);

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions

claimed by keeping and producing adequate records that enable the Commissioner

to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v.

Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir.

1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, an employee business expense is not ordinary and necessary if the employee is entitled to reimbursement from his or her employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo.

2012-272. In addition, a deduction normally is not available for personal, living, or family expenses. Sec. 262(a).

Section 162(a)(2) allows a taxpayer to deduct travel expenses, including expenditures for meals and lodging, if the expenses are reasonable and necessary, incurred "while away from home", and made in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Although the term "home" (or "tax home") in section 162(a)(2) normally means a taxpayer's principal place of employment (and not the taxpayer's personal residence), see Mitchell v. Commissioner, 74 T.C. 578, 581 (1980), an exception to this rule arises when a taxpayer accepts employment away from his or her personal residence and the employment is temporary rather than indefinite, see Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); Deamer v. Commissioner, T.C. Memo. 1984-63, aff'd, 752 F.2d 337 (8th Cir. 1985). The purpose underlying this exception is to relieve the taxpayer of the burden of duplicate living expenses while at a temporary employment location, since it would be unreasonable to expect him to move his residence under such circumstances. Tucker v. Commissioner, 55 T.C. 783, 786 (1971).

Section 162(a) (flush language) provides that "the taxpayer shall not be treated as being temporarily away from home during any period of employment if

such period exceeds 1 year." Employment is considered temporary if the engagement is expected to last for only a short period. Norwood v. Commissioner, 66 T.C. 467, 469 (1976). Temporary employment may become indefinite, however, if it is expected to last for a substantial, indefinite, or indeterminate duration or due to changed circumstances or the passage of time. Id. at 469-470; Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Whether an employment opportunity is temporary or indefinite normally depends on the facts and circumstances of each case, and the burden of proving that employment was temporary rests on the taxpayer. Rule 142(a); Peurifoy v. Commissioner, 358 U.S. at 60-61; Welch v. Helvering, 290 U.S. at 111.

Respondent determined that Wentzville, Missouri, was Mr. Snellman's tax home between May 24 and November 18, 2009. Petitioners contend that Mr. Snellman's tax home was Indialantic, Florida--petitioners' place of residence during 2009. We agree with petitioners.

Although Mr. Snellman's employment contract is not part of the record, he credibly testified that Fidelis hired him as a temporary project manager for a single project that was scheduled to end no later than December 31, 2009, or approximately seven months after his date of hire. As it turned out, Mr. Snellman's employment with Fidelis ended a month earlier in November 2009.

Mr. Snellman's testimony that his employment with Fidelis was temporary, as opposed to indefinite, is corroborated by the fact that his apartment lease was scheduled to expire on December 31 and he negotiated an addendum to the lease agreement to allow for termination of the contract on short notice. Considering all the facts and circumstances, we conclude that Mr. Snellman's employment with Fidelis was temporary and his tax home for 2009 was Indialantic. See Linetsky v. Commissioner, T.C. Memo. 1994-306.

We next consider whether the unreimbursed employee expenses in dispute were ordinary and necessary expenses within the meaning of section 162(a) and/or whether they have been properly substantiated.

## I. Vehicle Expenses

Section 274(d) prescribes stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own

statement which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., supra, provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides that the strict substantiation requirements of section 274(d) for vehicle expenses must be met even where the optional standard mileage rate is used. Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

Petitioners claimed a deduction of $4,060 for vehicle expenses related to Mr. Snellman's employment with Fidelis. Although petitioners reported on their tax return that Mr. Snellman drove 7,381 miles for business purposes, Mr. Snellman produced a mileage log (admittedly created after respondent issued the notice of deficiency) indicating that he drove 10,621 miles for business purposes.

There is no evidence that Mr. Snellman maintained any records or notes related to his vehicle expenses at the time they were incurred. The mileage log offered into evidence at trial was created long after the taxable year in issue and lacks a description of the business purpose of each trip. Inasmuch as the mileage log fails to meet the strict substantiation requirements of section 274(d) and with the minor exception noted below, we sustain respondent's determination disallowing a deduction for vehicle expenses. See Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Although the mileage log itself is of little to no value to the Court, there is no question that Mr. Snellman drove from Florida to Missouri and back, in May and November 2009, respectively, in connection with his employment with Fidelis. A round trip by car from Indialantic, Florida, to Wentzville, Missouri, is approximately 2,210 miles. Consistent with our holding that Mr. Snellman's tax

home was Indialantic, we hold that petitioners are entitled to a deduction for vehicle expenses of $1,215 (before the 2% floor prescribed in section 67) to account for the cost of transportation to and from his temporary work location.

## II. Parking Fees and Tolls

Petitioners claimed a deduction of $360 for parking fees and tolls. Petitioners did not develop the issue at trial, and they did not present any records or make a reasonable reconstruction in an effort to substantiate the expenses. There is no evidence in the record that would allow us to estimate the amount of an allowable deduction. See Vanicek v. Commissioner, 85 T.C. at 743. Consequently, respondent's determination disallowing a deduction for parking fees and tolls is sustained.

## III. Travel Expenses

Petitioners claimed a deduction of $27,200 for travel expenses incurred while away from home. Specifically, they concluded that Mr. Snellman was entitled to a deduction for his subsistence (meals and lodging expenses) equal to $170 per day multiplied by 160 days (representing the days he purportedly was in Missouri).[6] Respondent asserts that Mr. Snellman spent 136 days in Missouri for

---

[6]IRS Publication 1542, Per Diem Rates (For Travel Within the Continental United States) (Rev. October 2008; October 2009), provides a per diem rate for St.

(continued...)

business purposes in 2009, that petitioners failed to properly compute the deduction claimed for meal expenses in accordance with section 274(n), and that they are not entitled to compute the amount of any deduction allowable for lodging expenses on a per diem basis.

A.  Per Diem Allowances

The Commissioner is authorized to prescribe rules under which certain types of expense allowances, including per diem allowances for ordinary and necessary expenses for traveling away from home, will be regarded as satisfying the substantiation requirements of section 274(d).  Sec. 1.274-5(j), Income Tax Regs.  Under this authority, the Commissioner issues updated revenue procedures each year enumerating the per diem rules.  As is relevant here, Rev. Proc. 2008-59, 2008-2 C.B. 857, applies to expenses incurred before October 1, 2009, and Rev. Proc. 2009-47, 2009-42 I.R.B. 524, applies to expenses incurred on or after October 1, 2009.

Employees who are not reimbursed by their employers may use an optional per diem method in lieu of using actual expenses to compute their deductible meal and incidental expenses paid or incurred in the course of employment-related

_____

[6](...continued)
Charles County, Missouri, of $170 during 2009, comprising $59 for meals and incidentals and $111 for lodging expenses.

travel. Under this optional method, meal and incidental expenses may be computed on the basis of the Federal meal and incidental expense rate for the locality of travel for each calendar day the employee is away from home. Rev. Proc. 2009-47, sec. 4.03, 2009-42 I.R.B. at 526; Rev. Proc. 2008-59, sec. 4.03, 2008-2 C.B. at 860. Expenses will be deemed substantiated for purposes of section 1.274-5, Income Tax Regs., if the employee substantiates the elements of time, place, and business purpose of the travel. Harris v. Commissioner, T.C. Memo. 2012-312, at *5-*6; see also Romer v. Commissioner, T.C. Memo. 2001-168; Reynolds v. Commissioner, T.C. Memo. 2000-20, aff'd, 296 F.3d 607 (7th Cir. 2002); Rev. Proc. 2009-47, sec. 4.03; Rev. Proc. 2008-59, sec. 4.03.

B. Travel Status

Mr. Snellman spent 26 days in Florida visiting his family between May 24 and November 18, 2009. After Fidelis terminated his employment on November 2, 2009, Mr. Snellman spent 16 additional days in Missouri before driving to Indialantic. Allowing Mr. Snellman a reasonable amount of time to vacate his apartment and wind up his affairs in Missouri, we conclude that he spent a total of 137 days in Missouri for business purposes.

C.  Meals and Incidental Expenses

Mr. Snellman was not reimbursed by Fidelis for his meals and incidental expenses, and he otherwise may substantiate such expenses under the revenue procedures outlined above.  As respondent points out, however, the amount allowable as a deduction for meals and entertainment expenses is subject to the 50% limitation prescribed in section 274(n).  In accordance with the foregoing, we conclude that petitioners are entitled to a deduction of $4,042 for meals and incidental expenses before the application of the 2% floor (i.e., the per diem rate of $59 multiplied by 137 (the number of days Mr. Snellman spent in Missouri for business purposes) multiplied by 50% pursuant to section 274(n)).

D.  Lodging Expenses

Lodging expenses paid or incurred by an employee while away from home are not eligible to be computed on the basis of a per diem allowance.  See Rev. Proc. 2009-47, sec. 1, 2009-42 I.R.B. at 524; Rev. Proc. 2008-59, sec. 1, 2008-2 C.B. at 857.  An employee must substantiate the amount, time, place, and business purpose of each claimed lodging expense.  Harris v. Commissioner, at *5-*6.

Petitioners failed to substantiate Mr. Snellman's lodging expenses between May 24 and June 10, 2009.  Although he testified that he stayed in a hotel during this period, petitioners did not offer any records such as a hotel invoice or credit

card statement to substantiate the amount, if any, that he paid for lodging during this period. On the other hand, the record reflects that Mr. Snellman entered into a lease agreement to rent an apartment at a rate of $525 per month from June 11 to December 31, 2009. The record does not include canceled checks or receipts showing that Mr. Snellman actually paid the $525 monthly rent for the full term of the lease. Nevertheless, Mr. Snellman's testimony regarding his living arrangements was forthright and credible. Consequently, we conclude that petitioners are entitled to a deduction for lodging expenses of $2,975, comprising a pro rata share of the monthly rental charge for June and full monthly charges for July through November.

## IV. Additional Expenses

Petitioners provided receipts for various expenditures including dry cleaning, Internet and cable services, car rental, airfare, and cab fares, along with logs detailing round trip mileage from petitioners' home in Indialantic to the airport in Orlando and from Mr. Snellman's apartment in St. Charles to the airport in Missouri. By all indications, these expenses are nondeductible personal expenses. In the absence of any showing that these expenses served a business purpose, we conclude that no deduction is allowed for these items.

Consistent with the preceding discussion,

<u>Decision will be entered</u>

<u>under Rule 155</u>.