T.C. Memo. 2021-100

UNITED STATES TAX COURT

ALEXANDER BERNARD WATHEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4310-18.                    Filed August 11, 2021.

Alexander Bernard Wathen, pro se.

<u>Courtney M. Hill</u> and Gabriel Okoye (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated February 4, 2015, respondent

determined the following deficiencies, additions to tax, and penalties:[1]

---

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are rounded to the
nearest dollar.

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|---------------------|
| 2010 | $40,091 | $10,023 | $8,018 |
| 2011 | 29,615 | 7,404 | 5,923 |

The issues for decision are: (1) whether petitioner's prior bankruptcy proceeding precludes respondent from pursuing the above deficiencies, additions to tax, and penalties;[2] (2) whether petitioner failed to report gross receipts of $59,726 and $15,833 for 2010 and 2011, respectively, on Schedules C, Profit or Loss From Business; (3) whether petitioner failed to report partnership income of $1,951 for 2010 on Schedule E, Supplemental Income and Loss;[3] (4) whether petitioner is entitled to deduct travel expenses of $8,732 and $21,980 for 2010 and 2011, respectively, on Schedules C; (5) whether petitioner is entitled to deduct office expenses of $46,717 and $53,420 for 2010 and 2011, respectively, on Schedules C; (6) whether petitioner is liable for additions to tax under section

_____

[2] At trial petitioner moved for summary judgment that res judicata, collateral estoppel, and judicial estoppel bar respondent from asserting these deficiencies, additions to tax, and penalties. His motion was not timely under Rule 121 or our standing pretrial order, and we advised the parties to address petitioner's legal arguments in their posttrial briefs. We will deny petitioner's motion as moot but address his legal arguments below.

[3] Respondent conceded half of the $3,902 adjustment for failure to report partnership income because the notice of deficiency contained a duplicate entry.

[*3] 6651(a)(1) for failure to timely file tax returns for both years in issue; and

(7) whether petitioner is liable for penalties under section 6662(a) and (b)(2) for

substantial understatements of income tax for both years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts

are incorporated in our findings by this reference. Petitioner resided in Texas

when he timely filed his petition.

I.     Background

A.     Petitioner's Bankruptcy Practice

During the years in issue petitioner was a bankruptcy lawyer; he listed legal

services as his principal business or profession on his Schedules C. And during

those years he lived and worked in Houston, Texas; he listed Houston as his home-

address city on his Forms 1040, U.S. Individual Income Tax Return, and as his

business-address city on his bank accounts.

In 2009 petitioner's bankruptcy practice expanded to Austin and San

Antonio, Texas, and throughout the years in issue he would travel to both cities to

attend court hearings or meet with clients. The U.S. Bankruptcy Court for the

Western District of Texas has locations in both cities.

Petitioner's engagement as counsel in bankruptcy proceedings is

documented by automated notices of electronic filing (NEF) sent to his personal

**[*4]** email address from the U.S. Bankruptcy Court for the Western District of Texas and the U.S. Bankruptcy Court for the Southern District of Texas. The record includes 52 such notices related to proceedings that took place in 2010 and 59 for 2011. They list petitioner as counsel on behalf of various debtors; some reference upcoming hearings or meetings in San Antonio or Austin although they do not show who was present and do not indicate whether a meeting or hearing was later rescheduled, which sometimes occurred.

Petitioner's bank statements for the years in issue show filing fees paid to U.S. bankruptcy courts in Texas (noted generally as "COURTS/USBC-TX") but do not indicate any client. These filing fees totaled $15,070 for 2010 and $9,695 for 2011. The bank statements also show charges for PACER and LexisNexis-- research services that petitioner used in connection with his bankruptcy practice. PACER expenses totaled $233 for 2010 and $246 for 2011. LexisNexis expenses totaled $1,055 for 2010 and $1,459 for 2011.

When petitioner traveled for his bankruptcy practice, he typically would stay at a motel or hotel booked by phone, email, or through Priceline. He received flight, hotel, and rental car confirmations sent to one of his personal email addresses from companies such as Southwest, Priceline, and Hertz.

[*5]   Petitioner did not keep any records--such as records of travel expenses or office expenses--of how much he spent on any given bankruptcy case as counsel for the debtor.  When he submitted his fees for bankruptcy court approval, he included filing fees and other charges and was reimbursed for those fees.

During the years in issue petitioner was a partner in the Vuong & Wathen Partnership (Vuong & Wathen).  Vuong & Wathen reported $1,951 as petitioner's share of income on his Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., for 2010.[4]

B.      Petitioner's Personal Bankruptcy

On August 6, 2012, petitioner, as an individual debtor, filed for chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas.  That same month, the Internal Revenue Service (IRS) filed a proof of claim for tax years 2010 and 2011.  It later amended its proof of claim on February 27, 2013, two days after petitioner untimely filed his 2010 and 2011 Forms 1040.

In June 2014 petitioner proposed a chapter 13 plan, which listed the IRS' priority claim.  The bankruptcy court entered an order confirming the plan in August 2014.  The order confirming the plan did not cite 11 U.S.C. sec. 505(a)(1)

---

[4] The parties stipulated the amount reported on petitioner's 2010 Schedule K-1 for Vuong & Wathen, but the Schedule K-1 itself is not in the record.

[*6] or otherwise state that it was issued pursuant to the bankruptcy court's authority to determine taxes under that section. Nor did it include any factual recitations of petitioner's income, deductions, and credits or otherwise state his total Federal tax liability for any year.

In December 2017 petitioner was granted a discharge of debts under 11 U.S.C. sec. 1328(a). The order of discharge noted that "[s]ome debts are not discharged" and listed as "[e]xamples of debts that are not discharged" debts for taxes specified in 11 U.S.C. sec. 523(a)(1)(B). There is no indication that the IRS agreed to waive any of its rights with respect to tax debts excepted from discharge under title 11 of the United States Code (Bankruptcy Code).

While the bankruptcy case was pending, respondent issued the notice of deficiency before us; petitioner filed his petition in March 2018, soon after the chapter 13 trustee submitted the final report and account of the bankruptcy estate.

II. Petitioner's Tax Returns

Petitioner failed to timely file his Forms 1040 for 2010 and 2011. He was required to file his 2010 return by October 15, 2011, and his 2011 return by April 15, 2012; he did not file either until February 25, 2013.

[*7]   Included with each Form 1040 was Schedule C, on which petitioner reported total gross receipts of $103,124 for 2010 and $148,295 for 2011.  He also reported various business expenses, including:

| Expense | 2010 | 2011 |
|---|---|---|
| Car and truck | $12,809 | $9,558 |
| Office | 46,717 | 53,420 |
| Travel | 8,732 | 21,980 |
| Meals and entertainment | 2,560 | 2,181 |

Not included with either Form 1040 was Schedule E, on which income or loss from partnerships is reported.

Petitioner did not keep a set of books and records computing his gross receipts or classifying his expenses into the four categories above.  The record includes bank statements for business accounts petitioner owned during the years in issue.  In his posttrial brief petitioner reconstructed his travel and office expenses using these bank statements.  He grouped the office expenses into categories, including:  telecommunications, bar dues and professional organization memberships, equipment, advertising and marketing, printing, shipping and mailing, office supplies, bankruptcy court filing fees (those noted generally as "COURTS/USBC-TX"), outside services (including PACER), and legal research and legal and professional services (including LexisNexis).

[*8] III.　　Respondent's Determinations

In the notice of deficiency respondent increased petitioner's reported Schedule C gross receipts by $59,726 for 2010 and $15,833 for 2011, stating that "[i]n the absence of adequate records, your taxable income for the taxable years shown above [2010 and 2011] has been computed by reference to bank deposits and cash payments, plus personal and other nondeductible expenditures if any." These adjustments were based on the examining agent's analysis of petitioner's bank statements, which calculated the difference between petitioner's bank deposits (less payroll, transfer from other bank accounts, refunds, or other nontaxable deposits) and petitioner's reported gross receipts.

Respondent disallowed petitioner's claimed deductions for Schedule C travel and office expenses for both years in issue because the expenses "ha[d] not been adequately substantiated (as to amount or deductibility)." Respondent allowed petitioner's claimed Schedule C deductions for car and truck and meals and entertainment expenses.

Respondent also adjusted petitioner's income to include Schedule E partnership income of $3,902 for 2010. Respondent conceded that the adjustment duplicated the entry "Form 1065 K-1--Vuong & Wathen--$1,951.00". See supra note 3. Only $1,951 of the adjustment remains in issue.

**[\*9]**  Finally, respondent determined additions to tax under section 6651(a)(1) and penalties under section 6662 for both years in issue.  The record includes a Civil Penalty Approval Form prepared by the examining agent.  It was signed by the examining agent's group manager on December 3, 2014.

OPINION

I.      Preclusive Effect of Prior Bankruptcy Proceeding

Petitioner argues that respondent is precluded from pursuing this deficiency case by res judicata, collateral estoppel, and judicial estoppel because his chapter 13 plan--which included the IRS' priority claim for the years in issue--was confirmed by the bankruptcy court.  He does not dispute that the taxes at issue are nondischargeable under the Bankruptcy Code.

Res judicata prevents repetitious suits involving the same cause of action and is rooted in "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner v. Sunnen, 333 U.S. 591, 597 (1948).  However, where the subsequent cause of action or demand is different, the principle of res judicata may be applied "much more narrowly", as collateral estoppel. Id. at 597-598.  Collateral estoppel precludes litigation of issues in a second cause of action if those issues were actually litigated and necessary to the outcome of the first action.  Hambrick v.

[*10] <u>Commissioner</u>, 118 T.C. 348, 353 (2002) (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979)).

Judicial estoppel prevents parties in subsequent judicial proceedings from asserting positions contradictory to those they previously have persuaded a court to accept. <u>Huddleston v. Commissioner</u>, 100 T.C. 17, 26 (1993) (citing <u>United States ex rel. American Bank v. C.I.T. Constr. Inc. of Tex.</u>, 944 F.2d 253, 257-259 (5th Cir. 1991)). "[I]t seeks to protect the integrity of the judicial process by preventing a party from successfully asserting one position before a court and thereafter asserting a completely contradictory position before the same or another court merely because it is now in that party's interest to do so." <u>Id.</u>

At trial we directed petitioner to the Court's Opinion in <u>Breland v. Commissioner</u>, 152 T.C. 156 (2019). In <u>Breland</u> the U.S. Bankruptcy Court for the Southern District of Alabama had entered a consent order in the taxpayer's prior chapter 11 proceeding, resolving the IRS' objection to a plan of reorganization that settled the amount of the IRS' priority claim and setting out procedures for resolving the IRS' unsecured general claim for the relevant tax years. <u>Id.</u> at 157-160. The IRS later issued a notice of deficiency for tax years covered by the consent order, and the taxpayer argued that the consent order and the principle of res judicata precluded the IRS from collecting any additional tax. <u>Id.</u>

[*11] We held that res judicata did not apply because the redetermination of a taxpayer's total Federal tax liability for the years covered by a notice of deficiency and the resolution of the IRS' objection in a bankruptcy plan confirmation proceeding were not the same cause of action. Id. at 161-162. Notably, the facts that gave rise to the deficiency proceeding were the taxpayer's income, deductions, and credits, whereas those that gave rise to the consent order and plan confirmation were the viability of the proposed plan of reorganization and the disposition of the debtor's assets. Id. at 162 (noting that causes of action are the same for purposes of res judicata if they arise out of the same nucleus of operative fact (citing Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1297, 1299 (11th Cir. 2001))).

We also held that collateral estoppel did not apply because there was no indication that the taxpayer's total Federal tax liability was ever actually litigated or even at issue before the bankruptcy court. Id. at 171, 172. Notably, the consent order did not cite or otherwise mention the bankruptcy court's authority to determine taxes under 11 U.S.C. sec. 505(a)(1), nor did it include any factual recitations of the taxpayer's income, deductions, and credits or otherwise state his total Federal tax liability for any year before the bankruptcy court. Id. at 166-167 ("[T]here * * * [was] no indication that the IRS agreed to waive any of its unique

[*12] rights under the Bankruptcy Code with respect to the tax debts that were excepted from discharge[.]").

This case is analogous to Breland on both issues. Here, the facts underlying the deficiency proceeding--petitioner's tax items for each year--were not raised or litigated in the plan confirmation proceeding. Rather, the plan confirmation focused on the reorganization and disposition of petitioner's assets pursuant to 11 U.S.C. sec. 1325. And the three indicia that a taxpayer's total Federal tax liability was actually litigated or at issue in the bankruptcy proceeding that were absent in Breland--reference to the bankruptcy court's authority to determine taxes under 11 U.S.C. sec. 505(a)(1), factual findings related to tax items, waiver of rights by the IRS--are also absent here. The causes of action are not the same and petitioner's total Federal tax liability was not at issue before the bankruptcy court, and therefore res judicata and collateral estoppel do not apply.

As for petitioner's argument that judicial estoppel bars respondent from pursuing this case, he does not identify how the IRS' proof of claim in his chapter 13 bankruptcy is completely contradictory to its determination of deficiencies in this case. He merely states that respondent would "gain the advantage of not being bound by its proofs of claim in bankruptcy." But that is an outcome contemplated by the Bankruptcy Code, particularly when the taxpayer has failed to timely file

[*13] certain returns, <u>see</u> 11 U.S.C. 523(a)(1)(B) (2018), and one petitioner was made aware of in the order discharging his debts.  We are not persuaded by petitioner's general references to the doctrine of judicial estoppel.

We also find petitioner's reliance on <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260 (2010), misplaced.  In <u>Espinosa</u> the Supreme Court rejected a creditor's challenge to a discharge order as void because it violated a bankruptcy provision requiring a finding of undue hardship before discharging certain student loan debts.  It did not address the effect of a proof of claim or discharge of a tax debt in a bankruptcy proceeding on a subsequent IRS deficiency determination.  Because petitioner's prior bankruptcy proceeding does not bar respondent's deficiency determination, we move on to the remaining issues before us.

II.     Burden of Proof

Taxpayers generally bear the burden of proving that the Commissioner's determinations in a notice of deficiency are erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such

- 14 -

[*14] issue." See Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Petitioner does not argue and the record does not show that he has introduced credible evidence sufficient to shift the burden of proof to respondent under section 7491(a) as to any relevant factual issue. Therefore, he generally bears the burden of proof.

In cases involving unreported income, the Court of Appeals for the Fifth Circuit, to which any appeal in this case would ordinarily lie, see sec. 7482(b)(1)(A), has held that the Commissioner must present "some predicate evidence supporting * * * [his] determination" that the taxpayer received unreported income for the presumption of correctness to attach to the notice of deficiency, Portillo v. Commissioner, 932 F.2d 1128, 1133-1134 (5th Cir. 1991), aff'g in part, rev'g in part and remanding T.C. Memo. 1990-68.

III.    Unreported Income

A.    Schedule C Gross Receipts

Respondent increased petitioner's Schedule C gross receipts for both years in issue. Petitioner appeared to concede the issue at trial, stating he thinks the increases in gross receipts are "largely correct" and "feel[s] like he doesn't really have a leg to stand on to oppose * * * [the bank statement analysis]". And his posttrial briefs do not dispute the adjustments. For avoidance of doubt, we consider whether respondent presented the necessary "predicate evidence"

[*15] showing that petitioner received unreported income, and, if so, whether petitioner carried his burden of proving that the adjustments are erroneous.

Section 61(a) defines gross income as "all income from whatever source derived," including gross income derived from business. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The taxpayer is responsible for maintaining adequate books and records sufficient to establish his income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). For taxpayers who fail to keep adequate books and records, section 446(b) confers broad powers on the Secretary and his delegate, i.e., the Commissioner, to compute taxable income. Sec. 1.446-1(b)(1), Income Tax Regs.; see Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), aff'g T.C. Memo. 1966-81; Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).

One method of computing taxable income is the bank deposit method. It assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964) ("Of course * * * the Government must take into account any non-taxable source or deductible expense of which it has knowledge."). The use of the bank deposit method for computing income has long been sanctioned by the courts. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566

**[\*16]** F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Id. The taxpayer has the burden of showing that the determination is incorrect. Id. at 657.

Petitioner did not keep a set of books and records. Respondent therefore reconstructed petitioner's income using the bank deposit method. We find that the bank statements, supported by the examining agent's testimony at trial and the stipulated exhibits summarizing her analysis, are sufficient evidence for respondent's determination that petitioner received unreported income. See Portillo v. Commissioner, 932 F.2d at 1133-1134 (listing "showing the taxpayer's * * * bank deposits" as a means by which the Commissioner can attempt to substantiate the determination of unreported income). And petitioner has not met his burden of proving that the adjustments to his Schedule C gross receipts are erroneous; he not only appeared to concede that they are correct but also did not present any evidence refuting them.

B.     Schedule E Partnership Income

The definition of gross income under section 61(a) also includes a taxpayer's distributive share of partnership gross income. Sec. 61(a)(13). Petitioner stipulated that Vuong & Wathen reported $1,951 as his share of income on his 2010 Schedule K-1 and did not dispute the issue at trial or on brief. We therefore

**[\*17]** sustain respondent's determination to increase petitioner's income by that amount.[5]

IV.    Schedule C Deductions

Respondent disallowed petitioner's Schedule C deductions for travel and office expenses for both years in issue.  We must decide which, if any, of those deductions are allowable.

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An expense is ordinary if it is customary or usual within a particular trade, business, or industry, or arises from a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is "appropriate and helpful" to the business.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. at 113).  In contrast, a taxpayer may not deduct personal, living, or family expenses unless the law expressly provides otherwise.  Sec. 262(a).  The determination of whether an expense satisfies the requirements of

_____

[5] Rule 155 computations will be required to account for respondent's concession of half of the Schedule E income adjustment made in the notice of deficiency.  See supra note 3.  They will also be required to account for our conclusion that petitioner is entitled to office expense deductions for court filing fees and PACER and LexisNexis charges for both years.  See infra p. 25.

[*18] section 162 is a question of fact. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

Taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Therefore, they are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. at 440. Under the Cohan rule, the Court may estimate the amount of the expense if the taxpayer is able to demonstrate that he has paid or incurred a deductible expense but cannot substantiate the precise amount, as long as he produces credible evidence providing a basis for the Court to do so. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Court to estimate the amount of an expense, there must be some basis upon which an estimate can be made. Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390. Otherwise an allowance would amount to "unguided largesse." Id. (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)).

[*19] Certain business expenses (including travel, lodging, and meal expenses) are subject to the heightened substantiation requirements of section 274(d). Section 274(d) supersedes the Cohan rule. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) contemplates that no deduction or credit shall be allowed on the basis of a taxpayer's mere approximations or unsupported testimony. To meet the requirements of section 274(d), a taxpayer must substantiate the following by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place of the travel or use, and (3) the business purpose of the expense.

To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1). If a taxpayer cannot substantiate each element of an expense with adequate records, he may do so "by other sufficient evidence", namely "[b]y his

[*20] own statement, whether written or oral, containing specific information in detail as to such element" and "[b]y other corroborative evidence sufficient to establish such element." Id. subpara. (3), 50 Fed. Reg. 46020.

A. Travel Expenses

Petitioner's reported travel expenses related to his bankruptcy practice are subject to the heightened substantiation requirements of section 274(d).

Petitioner failed to meet these requirements. He did not maintain an account book, log, or similar record of his travel; keep any records reflecting his work on any given bankruptcy case; or produce any witnesses to corroborate when and where he traveled on business. He attempted to reconstruct the amount, time and place, and business purpose of his travel expenses through his trial testimony. But that testimony was of the kind disfavored by section 274(d): unsupported; petitioner couched nearly every explanation of his expenses in equivocal terms.[6] It

---

[6] Examples of petitioner's equivocal testimony include:

[T]he next one is a Priceline.com hotel confirmation for Dallas. And I haven't been able to find it, but I believe that was a Pubcon internet market conference. It was either called Pubcon South or something like that where they teach businesses how to market yourself online through the internet and social media, but I haven't been able to find that, and I believe that that is what that was for.

\*        \*        \*        \*        \*        \*        \*

[*21] did not have "a high degree of probative value to elevate such statement" to put it on equal footing with "adequate records" documentation.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985); see also Reynolds v. Commissioner, 296 F.3d 607, 616 (7th Cir. 2002) (noting that a taxpayer's attempted reconstruction of expenses by oral testimony undermined his case because it was "vague, confusing, and evasive"), aff'g T.C. Memo. 2000-20; Fiedziuszko v. Commissioner, T.C. Memo. 2018-75, at *15-*16 (disallowing travel expense deductions for lack of substantiation because, despite providing the Court with a calendar and statement of facts estimating the timing and costs of the trips, the taxpayer's testimony did not give the Court a sufficient basis for determining the amount of the expenses under section 274(d)), aff'd, 796 F. App'x 947 (9th Cir. 2020).

Neither did petitioner provide documentary evidence sufficient to establish the amount, time and place, and business purpose of his travel expenses; rather, it was also of the kind disfavored by section 274(d):  mere approximation.

---

The -- I'm not sure off the top of my head what the Orbitz [expense] was, but I may have to -- or what the CC payments were, but I believe those were business expenses rather than personal expenses.

**[\*22]** The automated NEF do not show that a given meeting or hearing actually occurred (petitioner acknowledged that meetings and hearings were sometimes rescheduled) or, assuming it did occur, that he was present. Petitioner's testimony offered little support; when asked whether he had attended a particular confirmation hearing, he stated that "it's likely I would have attended that, unless it got rescheduled, which probably wouldn't have happened." See Masat v. Commissioner, 784 F.2d 573, 575 (5th Cir. 1986) (ruling that the mere fact that a taxpayer owns out-of-State property does not satisfy his or her burden of proving that the travel expenses were motivated by business rather than personal reasons), aff'g in part, rev'g in part T.C. Memo. 1984-313.

Similarly, the email confirmations for hotel and flight reservations do not satisfy the requirements of section 274(d). Petitioner failed to organize these confirmations and connect them with reported business expenses. And, once again, his testimony repeatedly cast doubt on whether he actually took a given flight, was present for a given hotel stay, and was travelling for business purposes. For example, he testified that the documentation he provided includes additional travel days for rest before a convention, because he thinks it "important to get destressed so you're ready for the convention" and justified including extra days before and after conventions because he "got a really good Priceline deal".

**[\*23]** In sum, petitioner failed to substantiate each element of his travel expenses by adequate records or other sufficient evidence. We therefore sustain respondent's determination.

### B. Office Expenses

Petitioner's reported office expenses related to his bankruptcy practice are subject to the general substantiation requirements under section 6001. He did not keep a set of books and records for the years in issue, but rather used bank statements for his business accounts to classify various entries into different office expense categories.[7] See supra p. 7.

Petitioner testified that all office expenses were for his bankruptcy practice, but he did not provide any documentation indicating for what services his bank payments were made. For example, he categorizes "MeetUp.com" charges as deductible office expenses (grouped under the advertising and marketing category), whereas respondent argues that the charges are personal expenses for a social media site. Petitioner's failure to present evidence relating to the various

---

[7] We use the term "business account" to match the label given to the account by the bank and the parties' stipulation. But that does not mean that all the charges listed were "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" under sec. 162. Petitioner testified that he did not use the "business account" as a means for classifying his expenses as business or personal, and the entries indicate it was used for personal expenses (such as his home mortgage).

[*24] categories of reported office expenses leaves us without a basis upon which to distinguish between business expenses and personal expenses. See Davis v. Commissioner, T.C. Memo. 2006-272, 2006 WL 3780743, at *10 (finding that the Court does not have an adequate basis upon which to make a Cohan estimate where a taxpayer did not offer evidence to demonstrate allocation of internet fees between business and personal uses). This is a problem with nearly all of the expenses he categorized as office expenses in his posttrial briefs.[8] We therefore conclude that he cannot even satisfy the general substantiation requirement for most of his office expenses.

_____

[8] That petitioner is making these Schedule C expense categorizations in his posttrial brief points to an overarching problem in this case: the Court's inability to determine where petitioner reported any bank charge on his return. Petitioner did not present any documentation showing under which of the four Schedule C expense categories (car and truck; office; travel; meals and entertainment) he reported these charges. So even if we assume that every charge that petitioner now classifies as a travel or office expense is a business expense, we do not know whether respondent has already allowed it. If petitioner included an expense as a car and truck or meal and entertainment expense on a Schedule C, then respondent already allowed it. If petitioner included an expense as a travel or office expense on a Schedule C, then respondent disallowed it and petitioner needs to satisfy the substantiation requirements outlined above.

At trial we made petitioner aware of this issue. We advised him that if he wished to offer any additional evidence, he would have to move to reopen the record. We also advised him that he needed to connect the expenses from his bank statements with the expenses reported on his Schedules C and explain their business purpose, relying on evidence in the record. He did not make a motion to reopen the record.

[*25] We do conclude, nonetheless, on the basis of the bank statements and his testimony, that petitioner should be allowed a deduction for court filing fees (those noted generally as "COURTS/USBC-TX") and for PACER and LexisNexis charges. While petitioner's testimony was somewhat confusing regarding how he was compensated by clients for the court filing and legal research fees he incurred, his bank statements do show these charges. They are in distinct, recurring amounts; and the entries are sufficiently descriptive for us to conclude they were incurred in carrying on his trade or business as a bankruptcy lawyer. And respondent's bank deposit analysis included the entire amount of client payments in petitioner's Schedule C gross receipts. Therefore, we find sufficient evidence in the record to conclude that those amounts did not appear elsewhere on his return and therefore should be allowed as deductions against his gross receipts.

Because petitioner did not meet his burden for substantiating his remaining Schedule C expenses, we sustain respondent's determination except as noted above.

V.    Additions to Tax and Penalties

Finally, we must determine whether petitioner is liable for additions to tax under section 6651(a)(1) and accuracy-related penalties under section 6662(a) for both years in issue.

**[\*26] A.** <u>Section 6651(a)(1) Addition to Tax</u>

Section 6651(a)(1) imposes an addition to tax if the taxpayer fails to file his or her income tax return by the required due date (including any extension of time for filing).

The Commissioner bears the burden of producing evidence with respect to the liability of any individual for any addition to tax. Sec. 7491(c). The taxpayer bears the burden of proving that failure to timely file was due to reasonable cause and not willful neglect. <u>See</u> sec. 6651(a)(1); <u>Higbee v. Commissioner</u>, 116 T.C. at 447.

Respondent has introduced IRS account transcripts showing--and the parties have stipulated--that petitioner did not file his 2010 and 2011 Forms 1040 until after their due dates. Therefore, respondent's burden of production has been met. Petitioner did not establish that his failure to timely file was due to reasonable cause and not willful neglect.[9] Accordingly, we sustain the section 6651(a)(1) additions to tax for both years in issue.

---

[9] In attempting to explain how he reported his Schedule C gross receipts expenses on his 2010 and 2011 returns, petitioner also indicated why the returns were filed late and on the same date, stating: "I was in a bit of a hurry because my chapter 13 case would have been dismissed if I didn't prepare them. I did the best I could. I just didn't have all the records." If anything, this supports a finding of willful neglect, not reasonable cause.

[*27] B.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(2) impose a penalty equal to 20% of the portion of an underpayment of tax required to be shown on the return that is attributable to a "substantial understatement of income tax." An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d).

The Commissioner bears the burden of producing evidence with respect to the liability of any individual for any penalty. Sec. 7491(c). This includes showing compliance with section 6751(b)(1), which requires that certain penalties be personally approved in writing by the immediate supervisor of the individual making the determination. See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). The written supervisory approval must occur before the first formal communication to the taxpayer of the initial determination to assess penalties. Clay v. Commissioner, 152 T.C. 223, 249 (2019), aff'd, 990 F.3d 1296 (11th Cir. 2021). The taxpayer bears the burden of proving that the Commissioner's determination is incorrect or that he or she has an affirmative defense, such as reasonable cause and good faith under section 6664(c). See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

[*28] Respondent determined that petitioner understated his income tax by $40,091 for 2010 and $29,615 for 2011, each of which exceeds $5,000 and therefore meets the definition of a substantial understatement of income tax.[10] This result is not altered by respondent's concession of half of the adjustment for 2010 Schedule E partnership income and our determination that petitioner is entitled to office expense deductions for court filing fees and for PACER and LexisNexis charges for both years. In addition, the record indicates that written supervisory approval for the assertion of an accuracy-related penalty for 2010 and 2011 was given on December 3, 2014, which is before the first formal communication to petitioner of the initial determination to assess penalties (here, the notice of deficiency issued on February 4, 2015). See Frost v. Commissioner, 154 T.C. 23, 34-35 (2020). Respondent has therefore satisfied his burden of production under section 7491(c).

Petitioner has not shown that he acted with reasonable cause and in good faith with respect to any portion of the underpayment for either taxable year in issue. By contrast, his effort to assess his proper tax liability--the most important factor when determining reasonable cause and good faith, see sec. 1.6664-4(b)(1),

---

[10] The greater of 10% of the tax required to be shown on the return ($4,257 for 2010; $3,313 for 2011) or $5,000 is $5,000. See sec. 6662(d)(1).

[*29] Income Tax Regs.--appears to have been minimal.  He failed to keep records of receipts or expenses and failed to report partnership income.  Accordingly, we sustain the section 6662(a) accuracy-related penalties for both years in issue.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.